GREMILLION, Judge.
This is an appeal by the plaintiffs, T.L. James & Company, Inc. and its workers’ compensation insurer, Qatar General Insurance and Reinsurance Company, from a judgment by the trial court denying them reimbursement from the Louisiana Workers’ Compensation Second Injury Fund. We affirm the trial court’s judgment.
FACTS
Claudie Ray Smith was employed by T.L. James as a heavy equipment operator. On July 6, 1992, he was injured when the front-end loader he was operating turned over. As a result of this accident, he suffered injuries to his right wrist, shoulder, and lower back. He was admitted to the St. Francis Cabrini Hospital in Alexandria, Louisiana, for treatment of a complex distal radius fracture of the right Uwrist. In layman’s terms, Smith suffered a shattered right wrist. As a result of this injury, surgery was performed on Smith three different times. Dr. Douglas A. Waldman, an orthopedic surgeon, performed all three surgeries. The original surgery to repair Smith’s wrist was performed on July 7, 1992, with an external fixator being applied to his wrist to allow the wrist bones to heal properly and his arm placed in a half east. Surgery was again performed on September 3, 1992, to remove the external fixator. The final surgery, a proximal low car-pectomy, was performed on February 12, 1993. This procedure removed half of the bones in Smith’s wrist, in an attempt to increase his wrist motion.
Following each of these surgeries, Dr. Waldman treated Smith with physical therapy and pain medication. On September 18, 1992, an arthrogram and a CT scan were performed on Smith due to his continued complaints of low back and right shoulder pain. The arthrogram was negative for a tear of the rotator cuff and ruled out the possibility of a tom tendon. The CT scan revealed bulging of the L3 and L4 discs. On June 5, 1995, an MRI was performed on Smith’s lower back, which Dr. Waldman felt showed degenerative changes, but no ruptured disc. He testified that the CT had shown degenerative changes and since Smith was older, the degenerative changes had advanced. Dr. Waldman prescribed a lumbosa-cral brace for Smith, but he did not give him much chance for improvement.
T.L. James and Qatar General filed a claim with the Second Injury Board seeking reimbursement for workers’ compensation indemnity and medical benefits paid as a result of Smith’s work-related accident. Prior to his employment with T.L. James, Smith was injured when a tree limb struck him on the head. As a ^result, he suffered a fractured right leg, nerve damage to his eyes, and affected speech. In 1982 and 1989, Smith underwent coronary bypass surgery. The 1989 surgery was listed on Smith’s pre-em- *605 ployment physical examination for T.L. James. On June 8, 1994, the director of the Second Injury Board issued a decision denying T.L. James and Qatar General’s request. The board found that Smith’s preexisting disability did not merge or combine with his subsequent injuries of July 6, 1992, in accordance with La.R.S. 23:1371(0(1) and (2).
T.L. James and Qatar General next filed a petition in the trial court seeking review of the Second Injury Board’s decision pursuant to La.R.S. 23:1378(E). At a hearing held on November 9,1995, the ease was submitted to the trial court based on stipulations and medical evidence after argument by counsel. On January 26, 1996, the trial court issued reasons for judgment, affirming the denial of reimbursement by the Second Injury Board. T.L. James and Qatar General appeal this judgment.
LAW
The purpose of the Louisiana Workers’ Compensation Second Injury Fund is to encourage the employment of physically handicapped employees who have a permanent, partial disability by protecting employers and insurers from excess liability for workers’ compensation for disability when a subsequent injury to the employee merges with his preexisting disability to cause a greater disability than would have resulted from the subsequent injury alone. La.R.S. 23:1371(A). La.R.S. 23:1371(C) provides:
4As used in this part, the merger of an injury with a preexisting permanent partial disability is limited to the following:
(1) The subsequent injury would not have occurred but for the preexisting permanent partial disability; or
(2) The disability resulting from the subsequent injury in conjunction with the preexisting permanent partial disability is materially and substantially greater than that which would have resulted had the preexisting permanent partial disability not been present, and the employer has been required to pay and has paid compensation for that greater disability.
La.R.S. 23:1378(A) provides that an employer “who knowingly employs or retains in his employment an employee who has a permanent partial disability, as defined in Subsection F of this Section, shall be reimbursed from the second injury fund.... ”
In order to receive reimbursement from the Second Injury Fund, a party must prove that the compensation benefits qualify as being reimbursable. Huval Baking v. Worker’s Compensation Board, 594 So.2d 1028 (La.App. 3 Cir.1992). As laid out by La.R.S. 23:1371-1378, this burden is three fold. First, the party seeking reimbursement must establish that the employee had a preexisting permanent partial disability at the time of the subsequent injury. Commercial Union Ins. Co. v. State, Worker’s Compensation Second Injury Bd., 94-1202 (La.App. 3 Cir. 3/1/95), 651 So.2d 933; La.R.S. 23:1378(A).
Permanent partial disability in this context means any permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance in regard to obtaining employment. LSA-R.S. 23:1378(F). Where the employer shows he had knowledge of the preexisting disability prior to the subsequent injury, a presumption exists that the employer considered the conditions listed in LSA-R.S. 23:1378(F) to be permanent.
5Crown Zellerbach Corp. v. Louisiana Workmen’s Compensation Second Injury Bd., 481 So.2d 650, 652 (La.App. 1 Cir.1985), writ denied, 483 So.2d 1021 (La.1986). Cardiac disease is one of the listed conditions for which a presumption of permanent partial disability exists. La.R.S. 23:1378(F)(3).
Second, the party must prove that the employer knowingly retained the employee who had a preexisting permanent partial disability. This can be proven either by showing that the employer knowingly hired an employee with a permanent partial disability or that the employer acquired actual knowledge of the permanent partial disability during the employee’s employment, but prior to the subsequent injury, and retained the employee despite its knowledge of the disability. Id., La.R.S. 23:1378(A); Chandler Parts & Service v. Louisiana Worker’s Compensation Second Injury Bd., 576 So.2d 1133 (La.App. 3 Cir.), writ denied, 580 So.2d 383 (La.1991); *606 Commercial Union, 651 So.2d 933. If the employee suffers from one of the conditions listed in La.R.S. 23:1378(F), and the employer had knowledge of the condition prior to the employee’s subsequent injury, then there is a presumption that the “employer considered the condition to be permanent and to be or likely to be a hindrance or obstacle to employment.” La.R.S. 23:1378(F).
Finally, the party must prove that the employee incurred a subsequent injury arising out of and in the course of his employment, and that the subsequent injury merged with the preexisting permanent partial disability. Id.; La.R.S. 23:1371(C).
The standard of review to be applied in this case is manifest error. Id. This standard applies even when the case is submitted to the trial court on the basis 16of medical records and depositions. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706. Thus, the trial court’s findings of fact will not be reversed in the absence of manifest error.
DISCUSSION
Prior to argument, the parties stipulated that Smith, who was fifty years old, was employed by T.L. James as a heavy equipment operator and that he was involved in a work-related accident sustaining injuries which required surgery. They stipulated that Qatar General had paid workers’ compensation indemnity and medical benefits to Smith as a result of this injury. They further stipulated that T.L. James had prior knowledge of Smith’s cardiac disease before he was injured on July 6, 1992. As a result of these stipulations, the only issue before the trial court was whether a merger had taken place between Smith’s preexisting permanent partial disability (cardiac disease) and his subsequent disability (wrist, shoulder, and back) resulting in a greater disability for which T.L. James and Qatar General paid compensation benefits.
In its reasons for judgment, the trial court held that there was no evidence that Smith’s coronary bypass affected his work performance before the July 6, 1992 accident or that it merged with his subsequent injuries to create a greater disability following the accident. Based on this finding, the trial court affirmed the decision of the Second Injury Board. We agree with the trial court’s finding.
In his deposition, Dr. Waldman admitted that he was unfamiliar with Smith’s cardiac condition or the disability he suffered as a result, except to state that Smith appeared to do quite well with it since he could perform the position of heavy ^equipment operator for T.L. James. With regards to Smith’s orthopedic condition, Dr. Waldman felt that Smith was totally disabled and placed a 25% impairment on his upper extremity. All of the limitations Dr. Waldman would place on Smith were due to his orthopedic condition, not his cardiac condition. Essentially, he stated that Smith’s disability was solely related to his orthopedic condition.
Considering this evidence, it was reasonable for the trial court to find that T.L. James and Qatar General failed to prove they were entitled to reimbursement from the Second Injury Fund. There was no evidence that Smith’s preexisting heart condition combined with his wrist, shoulder, and back injury in such a way that his orthopedic injuries were materially and substantially greater than the disability resulting from these injuries alone. Since we find no evidence of a merger between the permanent partial disability and the subsequent injuries, we affirm the trial court’s judgment denying reimbursement.
CONCLUSION
For the foregoing reasons, the judgment of the trial court denying the plaintiffs’ request for reimbursement from the Louisiana Workers’ Compensation Second Injury Fund is affirmed. The costs of this matter are assessed against the plaintiffs, T.L. James & Company, Inc. and Qatar General Insurance and Reinsurance Company.
AFFIRMED.