2010 UT 62

Kevan FRANCIS and Rebecca Ives, individually, the natural parents of Samuel Ives, deceased; and Tim Mulvey and Rebecca Ives, individually and on behalf of their minor child Jack Mulvey, Plaintiffs and Appellants,

v.

STATE of Utah, UTAH DIVISION OF WILDLIFE RESOURCES; and John Does I–X, Defendants and Appellees.

No. 20090256.

Supreme Court of Utah.

Nov. 23, 2010.

Allen K. Young, Provo, Jonah Orlofsky, Chicago, IL, for plaintiffs.

Mark L. Shurtleff, Att'y Gen., Reed M. Stringham, III, Peggy E. Stone, Asst. Att'ys Gen., Salt Lake City, for defendants.

NEHRING, Justice:

## INTRODUCTION

¶ 1 A black bear attacked and killed eleven-year-old Samuel Ives while he was sleeping in a tent with his family during a camping trip in American Fork Canyon. Earlier that morning, the Utah Division of Wildlife Resources (the "DWR") had been alerted to a bear attack at the same location, and state officials had conducted an unsuccessful search for the animal for several hours before Samuel and his family arrived at the campsite. The DWR did not notify potential users of the campsite about the attack or request the United States Forest Service (the "USFS") to close the area where the attack had occurred.

¶ 2 Samuel's heirs sued the State of Utah and the DWR (collectively, "the State") for negligence. In response, the State argued that it was shielded from suit under the Governmental Immunity Act's "permit" exception[1] because Samuel's death arose out of, or in connection with, the plaintiffs' claim that the State negligently failed to request the USFS to issue an order closing the area where the bear attack had occurred. Be-

---

1. Utah Code Ann. § 63G–7–301(5)(c) (Supp. 2010). The Legislature renumbered Title 63 in 2008; because there were no substantive changes made to the sections at issue in this case, we cite to the renumbered sections.

cause the State conceded negligence for the purposes of the motion, the district court did not address whether the State owed Samuel a common law duty of reasonable care; the claim also went unaddressed in the State's arguments to the court. Yet, whether Samuel was owed a common law duty of reasonable care became the centerpiece of the State's quest for affirmance on appeal. The State also argued for the first time on appeal that it was immune under the Act's "natural condition" exception.[2]

¶ 3 We hold that the district court erred when it ruled that the State was immune from suit under the Act's permit exception. We also decline to affirm the district court on alternate grounds proffered by the State.

## BACKGROUND [3]

 ¶ 4 June 17, 2007, was Father's Day. That evening, the Ives family decided to camp at an unimproved campsite approximately one mile above the Timpanooke Recreation Area in American Fork Canyon. The campsite is located on land that is owned and controlled by the federal government, and the federal government is the only entity that can order the land's closure, even temporarily.

¶ 5 Earlier that morning, the same campsite was occupied by other campers, including Jake Francom. At about 5:30 a.m., a black bear entered the campsite and raided coolers owned by the campers, bumped Mr. Francom while he was asleep in his tent, and ripped open the tent. Mr. Francom and his camping companions drove the bear from the campsite without being injured.

¶ 6 Mr. Francom immediately reported the attack to the DWR, both directly and through other agencies. The DWR determined that the bear was a "Level III nuisance" and concluded that it needed to be destroyed. Agents of the DWR and the federal government then took up a four-and-a-half-hour effort to locate the bear. By approximately 4:00 p.m., the agents had not found the bear and decided to resume the search the next day. Although the bear was still at large, the DWR agents did not place any notices at the campsite or otherwise attempt to notify potential users of the campsite about the bear attack. Nor did the DWR agents request that the USFS close the campsite.

¶ 7 Shortly after the agents left the campsite, the Ives family entered and settled in for the evening. The family was unaware of the earlier bear attack. Sometime between 9:00 p.m. and midnight, a family member discovered that Samuel was not in the tent. A search led to the discovery of Samuel's lifeless body.

¶ 8 The Ives family and Samuel's biological father, Kevan Francis, sued the State for negligence. In response, the State asserted that it was shielded by governmental immunity. The State followed its answer to the plaintiffs' complaint with a motion for judgment on the pleadings under Utah Rule of Civil Procedure 12(c). Like the answer, the motion focused exclusively on the application of the Governmental Immunity Act of Utah to the plaintiffs' claims. Specifically, the State asserted that it was immune under the Act's permit exception, section 63G–7–301(5)(c), which provides that governmental entities retain immunity, even in the face of negligence, "if the injury arises out of, in connection with, or results from . . . the issuance, denial, suspension, or revocation of, or by the failure or refusal to issue, deny, suspend, or revoke, any permit, license, certificate, approval, order, or similar authorization." [4] The State argued that it was immune under the permit exception because the plaintiffs' complaint alleged that Samuel's death arose out of the State's negligent

---

2. *Id.* § 63G–7–301(5)(k).

3. "Because we are reviewing a grant of a motion for judgment on the pleadings, this court accepts the factual allegations in the complaint as true; we then consider such allegations and all reasonable inferences drawn therefrom in a light most favorable to the plaintiff. We affirm the grant of such motion only if, as a matter of law, the plaintiff could not recover under the facts alleged." *Healthcare Servs. Grp., Inc. v. Utah Dep't of Health*, 2002 UT 5, ¶ 3, 40 P.3d 591 (internal quotation marks and citation omitted). We recite the facts here accordingly.

4. Utah Code Ann. § 63G–7–301(5)(c).

failure to ask the USFS to close the site where the attack occurred.

¶ 9 The district court agreed and granted the State's motion for judgment on the pleadings. The district court held that the plaintiffs' claims fell within the permit exception because Samuel's death "had at least some causal relation to the State's failure to revoke its camping authorization to [p]laintiffs." The plaintiffs appeal that order. For the reasons that follow, we hold that the Act's permit exception has no bearing on the claims made by the plaintiffs in this action. We also decline to address the two alternate arguments presented by the State on appeal because they are not apparent on the record. We have jurisdiction under Utah Code section 78A–3–102(3)(j) (Supp.2010).

**STANDARD OF REVIEW**

■ ¶ 10 A district court's decision to dismiss claims based on governmental immunity is a determination of law that we give no deference and review for correctness.[5] We will affirm the ruling of a lower court on alternate grounds only when the ground or theory is "apparent on the record."[6] To be "apparent on the record," "[t]he record must contain sufficient and uncontroverted evidence supporting the ground or theory to place a person of ordinary intelligence on notice that the prevailing party may rely thereon on appeal."[7]

**ANALYSIS**

I. THE STATE IS NOT IMMUNE UNDER THE UTAH GOVERNMENTAL IMMUNITY ACT'S PERMIT EXCEPTION

■ ¶ 11 We first address whether the district court erred when it granted the

State's motion for judgment on the pleadings on the basis that the State was immunized from suit under section 63G–7–301(5)(c) of the Governmental Immunity Act of Utah.[8]

■ ¶ 12 "Generally, to determine whether a governmental entity is immune from suit under the Act, we apply a three-part test, which assesses (1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular activity; and (3) whether there is an exception to that waiver."[9] The parties do not dispute that the State performed a governmental function, and the State conceded negligence for the purpose of its motion for judgment on the pleadings.[10] Thus, the only issue is whether the permit exception immunizes the State from suit. The permit exception provides that a governmental entity retains immunity, even in the face of negligence, "if the injury arises out of, in connection with, or results from ... the issuance, denial, suspension, or revocation of, or by the failure or refusal to issue, deny, suspend, or revoke, any permit, license, certificate, approval, order, or similar authorization."[11]

¶ 13 The State contends that when the plaintiffs paid the federally-required entrance fee, "the federal government [gave] its authorization, albeit implicit, to stay in the area and hike, picnic, or camp." The State argues that the permit exception applies here because the plaintiffs' injury "arises out of, in connection with, or results from" their claim that the State negligently failed to request the federal government to revoke that authorization. We disagree.

■ ¶ 14 Our primary objective when interpreting a statute "is to give effect to the

5. *Hall v. Utah State Dep't of Corr.*, 2001 UT 34, ¶ 11, 24 P.3d 958.

6. *State v. Montoya*, 937 P.2d 145, 149 (Utah Ct.App.1997) (quoting *Limb v. Federated Milk Producers Ass'n*, 23 Utah 2d 222, 461 P.2d 290, 293 n. 2 (1969)).

7. *Id.* at 149–50.

8. Utah Code Ann. § 63G–7–301(5)(c) (Supp. 2010).

9. *Blackner v. State*, 2002 UT 44, ¶ 10, 48 P.3d 949.

10. Governmental immunity is generally waived for negligent conduct committed within the scope of a government worker's employment. *See* Utah Code Ann. § 63G–7–301(4) ("Immunity from suit of each governmental entity is waived as to any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment.").

11. *Id.* § 63G–7–301(5)(c).

legislature's intent. To discern legislative intent, we look first to the statute's plain language."[12] "We presume that the legislature used each word advisedly and read each term according to its ordinary and accepted meaning."[13] "If the plain language is unambiguous then we need not look beyond it and no other interpretative tools are needed in analyzing the statute."[14]

¶ 15 The Governmental Immunity Act of Utah "governs all claims against governmental entities or against their employees or agents arising out of the performance of the employee's duties, within the scope of employment, or under color of authority."[15] And the permit exception clearly states that

> [i]mmunity from suit of each governmental entity is not waived ... if the injury arises out of, in connection with, or results from ... the issuance, denial, suspension, or revocation of, or by the failure or refusal to issue, deny, suspend, or revoke any permit, license, certificate, approval, order, or similar authorization.[16]

Thus, under the plain language of the Act, to fall within the permit exception, *the governmental entity claiming immunity* must have either (a) issued, denied, suspended, or revoked or (b) failed or refused to issue, deny, suspend, or revoke "any permit, license, certificate, approval, order, or similar authorization."[17]

¶ 16 Here, it is undisputed that the United States, not the state of Utah, owns and controls the land where the bear attack occurred. It is further undisputed that the federal government was the only entity that had the authority to issue, deny, suspend, or revoke any permit, license, certificate, approval, order, or similar authorization related to the campground at issue and was the only entity that could order the closure of the campground, even temporarily. Thus, the State did not perform any act that falls within the scope of the permit exception. Government entities, like the State here, may not look to the authority of the United States to grant or revoke approval to camp on federally-controlled lands and import provisions of the Governmental Immunity Act at their pleasure to shield themselves from claims of negligence.

¶ 17 The State also claims that under our decisions in *Peck v. State*,[18] *Taylor ex rel. Taylor v. Ogden City School District*,[19] and *Ledfors v. Emery County School District*,[20] governmental immunity attaches when the injury has any causal connection to the exception claimed regardless of the status of the actor directly responsible for the injury. In other words, the State argues that it retains immunity under the permit exception even when a plaintiff's injury results from the *federal government's* failure (a) to close federally-owned and -controlled lands or (b) to revoke its prior authorization to use those lands. These cases are inapposite, however, for two reasons: First, none of these cases address the permit exception. Both *Taylor* and *Ledfors* deal with the "assault" exception found in Utah Code section 63G–7–301(5)(b),[21] and *Peck* addresses the "incarceration" exception found in Utah Code section 63G–7–301(5)(j).[22] Second, the plaintiffs' injuries in both *Taylor* and *Ledfors* originated from assaults that occurred on public school grounds controlled by Utah governmental entities,[23] and the injury in *Peck* was directly

---

**12.** *LPI Servs. v. McGee*, 2009 UT 41, ¶ 11, 215 P.3d 135 (internal quotation marks and citation omitted).

**13.** *Martinez v. Media–Paymaster Plus/Church of Jesus Christ of Latter–Day Saints*, 2007 UT 42, ¶ 46, 164 P.3d 384 (internal quotation marks omitted).

**14.** *R & R Indus. Park, L.L.C. v. Utah Prop. & Cas. Ins. Guar. Ass'n*, 2008 UT 80, ¶ 23, 199 P.3d 917 (citation omitted).

**15.** Utah Code Ann. § 63G–7–101(2)(b).

**16.** *Id.* § 63G–7–301(5)(c).

**17.** *Id.*

**18.** 2008 UT 39, 191 P.3d 4.

**19.** 927 P.2d 159 (Utah 1996).

**20.** 849 P.2d 1162 (Utah 1993).

**21.** *Taylor*, 927 P.2d at 162–63; *Ledfors*, 849 P.2d at 1165–66.

**22.** *Peck*, 2008 UT 39, ¶ 9, 191 P.3d 4.

**23.** *Taylor*, 927 P.2d at 160; *Ledfors*, 849 P.2d at 1163–64.

related to actions performed by the Utah Highway Patrol.[24] But here, it is undisputed that the plaintiffs' injury occurred on federal land and that the federal government had exclusive control over any authorization to use the campsite in question. Thus, *Taylor, Ledfors,* and *Peck* are inapplicable. The statutory language of the permit exception is unambiguous and, therefore, the district court was incorrect when it held that the State was immune from suit under section 63G–7–301(5)(c) of the Act.

## II. WE DECLINE TO AFFIRM THE DISTRICT COURT ON ALTERNATE GROUNDS

¶ 18 In addition to its contention that we should affirm the district court's application of the permit exception, the State asks this court to affirm the district court's decision based on two alternative arguments: First, that the plaintiffs' negligence claims fail because the State owed no duty to protect Samuel Ives under the public duty doctrine. Second, that the "natural condition" exception of the Governmental Immunity Act[25] applies in this case. The State is undaunted by its failure to argue these issues below and simply asserts that we should exercise our discretion to affirm the district court on either of these alternate grounds.

¶ 19 It is well established that this court *may* affirm the judgment appealed from

> if it is sustainable on any legal ground or theory *apparent on the record,* even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action, and this is true even though such ground or theory is not

urged or argued on appeal by appellee, was not raised in the lower court, and was not considered or passed on by the lower court.[26]

Of course, the converse is also true: we will not affirm a judgment if the alternate ground or theory is not apparent on the record.[27] "To hold otherwise would invite [each] party to selectively focus on issues below, the effect of which is holding back issues that the opposition had neither notice of nor an opportunity to address."[28] Thus, to be "apparent on the record" requires "more than mere assumption or absence of evidence contrary to the [alternate] ground or theory. The record must contain sufficient and uncontroverted evidence supporting the ground or theory to place a person of ordinary intelligence on notice that the prevailing party may rely thereon on appeal."[29]

¶ 20 We addressed the "apparent on the record" requirement in *Bailey v. Bayles.*[30] In that case, we affirmed a court of appeals' decision that held that the court of appeals did not err when it affirmed the trial court on alternate grounds because "[t]he record [was] rife with references" to the Cohabitation Abuse Act that formed the basis for the affirmance.[31] We also noted that the verified petition itself referenced a provision of the Act and the record clearly indicated that the parties had proceeded for a time under the assumption that the Act was applicable: both parties submitted motions that relied on the Act, and the appellee explicitly referenced and based her position on the Act during the bench trial.[32] We also found that the appellant's claim that he was surprised when the court of appeals affirmed the trial court based on the Act was "disingenuous at best

---

**24.** *Peck,* 2008 UT 39, ¶¶ 3–4, 191 P.3d 4.

**25.** Utah Code Ann. § 63G–7–301(5)(k) (Supp. 2010).

**26.** *Bailey v. Bayles,* 2002 UT 58, ¶ 10, 52 P.3d 1158 (emphasis added) (internal quotation marks omitted).

**27.** *See, e.g., State v. Montoya,* 937 P.2d 145, 149 (Utah Ct.App.1997) ("Critical to affirmance is the requirement that the ground or theory be 'apparent on the record.' If, in any way, the ground or theory urged for the first time on appeal is not

*apparent* on the record, the principle of affirming on any proper ground has no application." (citation omitted)).

**28.** *Id.*

**29.** *Id.* at 149–50.

**30.** 2002 UT 58, ¶¶ 9–17, 52 P.3d 1158.

**31.** *Id.* ¶ 14.

**32.** *Id.*

given the fact that he relied earlier in the course of the action upon the very statute used by the court of appeals."[33]

¶ 21 In contrast, the two alternative arguments the State now presents to this court are entirely absent from the record. The State never mentioned the issue of duty choosing instead to concede negligence for the purposes of its motion for judgment on the pleadings. The State also failed to mention the "natural condition" exception at any time. Furthermore, the State has not disclosed to this court any reason whatsoever why it believes the two issues are apparent on the record. Perhaps the State believes that the reasons are so self-evident that they require no explanation. If so, this belief reflects a perilous way to present an appeal. Although this court *may* affirm a decision of the district court on alternate grounds, it falls to the party seeking the benefit of the rule to explain why it is eligible to have the alternative arguments considered. The State here has chosen not to do so and the record contains no mention of either alternate argument. We decline, therefore, to affirm the decision of the district court on alternate grounds.

### CONCLUSION

¶ 22 The State is not immune from suit under section 63G–7–301(5)(c) of Utah's Governmental Immunity Act because the State cannot claim governmental immunity for actions wholly conducted by the federal government. Here, the federal government owned the land, issued any authorization to camp on the land, and was the only entity that could revoke that authorization. We also reject the State's two alternate arguments because they were not argued below and are not "apparent on the record." We therefore reverse the district court's order granting the State's motion for judgment on the pleadings and remand for proceedings consistent with this opinion.

¶ 23 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Judge ORME concur in Justice NEHRING's opinion.

**33.** *Id.* ¶ 16.

¶ 24 Justice WILKINS does not participate herein; Court of Appeals Judge GREGORY K. ORME sat.