2012 UT 42

**Susan I. MOSS and Jamal S. Yanaki, Plaintiffs and Appellants,**

v.

**PARR WADDOUPS BROWN GEE & LOVELESS, Clark Waddoups, Jonathan O. Hafen, Justin P. Matkin, and John Does I–XX, Defendants and Appellees.**

No. 20100595.

Supreme Court of Utah.

July 6, 2012.

David W. Scofield, Thomas W. Peters, Salt Lake City, for appellants.

Alan L. Sullivan, James D. Gardner, Salt Lake City, for appellees.

DURHAM, Justice:

## INTRODUCTION

¶ 1 The plaintiffs in this case brought suit against a law firm and its attorneys for their role in executing civil discovery orders. The orders authorized entry into plaintiffs' home to seize electronic files from plaintiffs' computer and other electronic devices. The plaintiffs raised several causes of action against the law firm and its attorneys, largely based on the theory that the execution of the civil discovery orders constituted an illegal warrantless search.

¶ 2 The district court granted the defendants' motion for judgment on the pleadings, and the court of appeals affirmed. On certiorari review, we affirm on alternate grounds. We first hold that res judicata does not bar plaintiffs' claims. On an issue of first impression, we further hold that the judicial proceedings privilege extends to attorneys' conduct in representing their clients. As applied to this case, the privilege bars all of plaintiffs' claims. We therefore affirm the court of appeals' dismissal of plaintiffs' claims.

## BACKGROUND

¶ 3 "Because we are reviewing a grant of a motion for judgment on the pleadings, this court accepts the factual allegations in the complaint as true; we then consider such allegations and all reasonable inferences drawn therefrom in a light most favorable to the plaintiff[s]." *Francis v. State,* 2010 UT 62, ¶ 3 n. 3, 248 P.3d 44 (internal quotation marks omitted).

¶ 4 Jamal S. Yanaki worked for Iomed, Inc. until January 17, 2002. On April 9, Iomed filed a complaint in the Third District Court alleging, among other things, that Yanaki had misappropriated trade secrets and breached his noncompete agreement. The complaint sought to enjoin Yanaki from disclosing trade secrets, contacting Iomed's clients, or otherwise engaging in competition with Iomed.

¶ 5 The day after filing suit, Iomed filed an Ex Parte Motion for Order to Conduct Immediate Discovery to Prevent the Destruction or Alteration of Evidence. Attorneys from Parr Waddoups Brown Gee & Loveless (Parr Brown) prepared the motion. On April 12, the district court granted the motion and issued an Order Allowing Immediate Discov-

ery to Prevent the Destruction or Alteration of Evidence (Order). First, the Order instructed Yanaki "to preserve and maintain without alteration all documents, including electronic media, in his possession or control relating to Iomed or any proposed product that is similar in concept to products offered by Iomed or being developed by Iomed." Second, the Order directed the Salt Lake County Sheriff's Office to execute the Order at Yanaki's home and to (1) "take custody of each of the ... electronic storage media ... in the possession, custody or control of" Yanaki, (2) "supervise the copying of information from the [electronic storage media] by the computer expert provided by Iomed and to return such copy to Yanaki," (3) "file the original [electronic files] under seal with the Court until they can be reviewed for privilege by Yanaki's counsel and analyzed by computer experts for content and evidence of deleted files," and (4) "recover any Iomed confidential files in Yanaki's possession, custody or control ... and to file those documents under seal with the Court." Finally, the Order described the process by which Yanaki could determine whether he had "objections that such files contain privileged, confidential or other information that would not be discoverable in this action." Upon completion of Yanaki's review, the Order provided that "Iomed, its counsel, and its experts ... [would] have access to the [electronic files] to evaluate whether they provide evidence relevant to this matter and use in the prosecution of this matter."

¶ 6 At approximately 8 a.m. on April 15, a Parr Brown attorney and a sheriff's deputy arrived at Yanaki's home to execute the Order. Yanaki was in Colorado, but Susan I. Moss, Yanaki's fiancée, was home and answered the door. The sheriff's deputy handed Moss copies of the summons, complaint, and Order. Upon reviewing the Order and seeing that it was directed to Yanaki, Moss advised the Parr Brown attorney and the sheriff's deputy that Yanaki was not home and that "she would not allow them in her home without Yanaki being present."

¶ 7 When Moss initially refused to allow the attorney and deputy to enter the home, the sheriff's deputy responded, "We can kick in this door." The Parr Brown attorney then "advised Moss that he was going to get a further legal process" and departed while the sheriff's deputy remained at the home. The attorney procured, ex parte, a Supplemental Order in Aid of Enforcement (Supplemental Order). The Supplemental Order "directed and authorized" the Salt Lake County Sheriff's Office to enter Yanaki's home and "use reasonable force, if necessary and appropriate under the circumstances, to execute the Order, including entering through unlocked doors, conducting a search of the premises, and detaining any person who resists enforcement of the Order."

¶ 8 The Parr Brown attorney returned to the home and served the Supplemental Order on Moss, who then "stepped aside" as the attorney, deputy, and others entered the home to commence execution of the Order. A second sheriff's deputy then arrived at the home to detain Moss if she attempted to interfere with execution of the Order. "The property of Yanaki and Moss was then taken, without the consent of either," to be reviewed pursuant to the Order.

¶ 9 In Iomed's suit against him, Yanaki did not challenge the validity or constitutionality of the Order and Supplemental Order. That suit later settled in 2005. Instead, in August 2003, Yanaki and Moss initiated this lawsuit against individual Parr Brown attorneys and, on a theory of respondeat superior, Parr Brown (collectively, Defendants).[1] In their first amended complaint, Yanaki and Moss raised seven claims based on the Defendants' involvement in Iomed's suit against Yanaki: (1) breach of settlement agreement,[2] (2) abuse of process, (3) invasion of privacy, (4)

1. In April 2003, Yanaki and Moss filed a separate suit in federal district court against several parties, including the Defendants. The court dismissed the federal claims and declined to exercise supplemental jurisdiction over the plaintiffs' remaining state law claims. *Yanaki v. Iomed, Inc.*, 319 F.Supp.2d 1261, 1266 (D.Utah 2004), *aff'd*, 415 F.3d 1204 (10th Cir.2005).

2. The court of appeals separately granted the Defendants summary judgment on this claim. *Moss v. Parr Waddoups Brown Gee & Loveless*, 2008 UT App 405, ¶ 1, 197 P.3d 659. Yanaki and Moss did not appeal that decision, and therefore this claim is not before us on appeal.

intentional infliction of emotional distress, (5) trespass to land and chattels, (6) conversion, and (7) civil conspiracy. Yanaki and Moss alleged that the Defendants conspired to commit each of the torts identified in claims two through six.

¶ 10 The complaint's factual background primarily alleged that the Defendants conducted a search known to be illegal under both the U.S. and Utah Constitutions. The complaint therefore focused on explaining why the Order was not a lawful search warrant, and how the Supplemental Order further exceeded constitutional limits.

¶ 11 In support of their allegations of abuse of process, Yanaki and Moss alleged that the Defendants "sought a legal process for illegal purposes and with ulterior motivations." Specifically, they alleged that "Iomed desired to misuse a legal process to cause an illegal raid ... as a form of message to its employees that they would be better off signing new agreements than leaving and risking their own homes being raided."

¶ 12 The district court granted the Defendants' motion for judgment on the pleadings. The district court first reasoned that the Defendants "did everything that they could reasonably have been expected to do" in seeking to protect their client's concern with the risk of misappropriated trade secrets. The court concluded that the Order "was reasonable and necessary to preserve evidence," stating that "[t]here are very few instances when this kind of discovery would be justified and this [was] one of them." Further, the court noted that the Parr Brown attorney present when executing the Order "only did what the order authorized him to do."

¶ 13 Because Yanaki had settled Iomed's suit against him, the court presumed that the Order was valid. The court further concluded that Yanaki "should have objected to the supposed illegality" of the Order in the course of Iomed's suit against him. The court noted that Moss "was not a party in [Iomed's suit against Yanaki] but she could have intervened in it." The court therefore concluded that both Yanaki and Moss were collaterally estopped from pursuing any claim that the Order was illegal.

¶ 14 Finally, the district court concluded that the Defendants were acting within the scope of the judicial proceedings privilege. The court quoted *Beezley v. Hansen* for the proposition that the privilege "is based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients." 4 Utah 2d 64, 286 P.2d 1057, 1058 (1955) (internal quotation marks omitted).

¶ 15 The court of appeals affirmed the district court's dismissal on alternate grounds. *Moss v. Parr Waddoups Brown Gee & Loveless*, 2010 UT App 170, ¶¶ 13–14, 237 P.3d 899. The court of appeals noted that "each of [p]laintiffs' tort claims depends upon a determination that the discovery orders were illegal," *id.* ¶ 9, and that each of the plaintiffs' tort claims "represents a collateral challenge to the discovery orders," *id.* ¶ 10. But the court of appeals noted that "[a]ny claimed error regarding the discovery orders at issue in this case could have been challenged or dealt with in the proceeding in which they were sought and obtained." *Id.* Even though Moss was not a party to Iomed's suit against Yanaki, the court of appeals held that she was "similarly precluded from collaterally attacking the validity of the discovery orders" because she could have "fil[ed] a motion to intervene or a petition for an extraordinary writ." *Id.* ¶ 11. The court of appeals quoted " '[t]he general rule of law' " that " 'a judgment may not be drawn in question in a collateral proceeding and an attack upon a judgment is regarded as collateral if made when the judgment is offered as the basis of a claim in a subsequent proceeding.' " *Id.* ¶ 14 (quoting *Olsen v. Bd. of Educ. of Granite Sch. Dist.*, 571 P.2d 1336, 1338 (Utah 1977)). The court of appeals therefore held that the plaintiffs "cannot now collaterally attack the legality of the discovery orders" and did not reach any of the plaintiffs' other issues. *Id.* ¶ 12.

¶ 16 Yanaki and Moss filed a petition for writ of certiorari. We granted the petition on one issue: whether the court of appeals erred in affirming the district court's dismissal of the complaint. We have jurisdic-

tion under Utah Code section 78A–3–102(3)(a).

## STANDARD OF REVIEW

■ ¶ 17 "On certiorari, we review the decision of the court of appeals for correctness, giving no deference to its conclusions of law." *Richards v. Brown*, 2012 UT 14, ¶ 12, 274 P.3d 911 (internal quotation marks omitted).

## ANALYSIS

¶ 18 Yanaki and Moss first challenge the holding that res judicata precludes their claims against the Defendants. In response, the Defendants argue that, if res judicata does not bar plaintiffs' claims, we should extend the judicial proceedings privilege to cover attorney conduct, as well as statements, occurring in the course of judicial proceedings. We consider each of these arguments in turn.

## I. RES JUDICATA

¶ 19 The court of appeals affirmed the district court's grant of the Defendants' motion for judgment on the pleadings based solely on the grounds that the plaintiffs were precluded from "collaterally attack[ing] the legality of the discovery orders." *Moss v. Parr Waddoups Brown Gee & Loveless*, 2010 UT App 170, ¶ 12, 237 P.3d 899. Yanaki and Moss raise several challenges to this basis for the court of appeals' decision. We agree that res judicata is not a proper ground for dismissing this suit.

■ ¶ 20 "[W]e use res judicata to refer to the overall doctrine of the preclusive effects to be given to judgments." *Brigham Young Univ. v. Tremco Consultants, Inc.*, 2005 UT 19, ¶ 25, 110 P.3d 678 (internal quotation marks omitted). There are "two branches of the judicially created doctrine known as res

judicata": claim preclusion and issue preclusion. *Allen v. Moyer*, 2011 UT 44, ¶ 6 & n. 6, 259 P.3d 1049. "Claim preclusion corresponds to causes of action; issue preclusion corresponds to the facts and issues underlying causes of action." *Id.* ¶ 6 n. 6 (alterations omitted) (internal quotation marks omitted). The court of appeals held that the plaintiffs' claims were precluded, although it did not use the labels of claim preclusion or issue preclusion. *Moss*, 2010 UT App 170, ¶ 12, 237 P.3d 899. By contrast, the district court had barred plaintiffs' claims explicitly based on issue preclusion. We therefore consider each of the two branches of res judicata in turn.

### A. Claim Preclusion

■ ¶ 21 Claim preclusion applies only when the following three elements are satisfied: (1) "both suits must involve the same parties or their privies," (2) "the claim that is alleged to be barred must have been presented in the first suit or be one that could and should have been raised in the first action," and (3) "the first suit must have resulted in a final judgment on the merits." *Allen*, 2011 UT 44, ¶ 6, 259 P.3d 1049 (alterations omitted) (internal quotation marks omitted); *see also Gillmor v. Family Link, LLC*, 2012 UT 38, ¶¶ 13–14, 284 P.3d 622 (explaining the second element in greater depth).

■ ¶ 22 Claim preclusion cannot bar Yanaki and Moss's claims in this case. This suit does not "involve the same parties or their privies" as were present in Iomed's suit against Yanaki. Although they represented Iomed, Parr Brown and its attorneys were not parties to Iomed's suit against Yanaki. In this suit, Yanaki and Moss are specifically suing Parr Brown and its attorneys for *their* role in the acquisition and execution of the civil discovery orders.[3] Thus, claim preclusion does not bar Yanaki and Moss's claims.[4]

3. As discussed in Part II, to overcome the judicial proceedings privilege, Yanaki and Moss must allege that Parr Brown's attorneys acted fraudulently, outside of the scope of representing Iomed, or otherwise in their own interest. *See infra* ¶ 37. This requirement illustrates why the Defendants are also not privies to Iomed for purposes of claim preclusion.

4. We pause to note that the court of appeals erred in how it analyzed Moss's ability to pursue claims against the Defendants. The court of appeals stated that Moss could have "fil[ed] a motion to intervene or a petition for an extraordinary writ," and that her failure to do either meant that "she cannot now collaterally attack the legality of the discovery orders." *Moss*, 2010 UT App 170, ¶ 11, 237 P.3d 899. It is of course

## B. Issue Preclusion

¶ 23 "Collateral estoppel, otherwise known as issue preclusion, prevents parties or their privies from relitigating *facts and issues* in the second suit that were fully litigated in the first suit." *Jensen ex rel. Jensen v. Cunningham*, 2011 UT 17, ¶ 41, 250 P.3d 465 (internal quotation marks omitted).

> Issue preclusion applies only when the following four elements are satisfied: (i) the party against whom issue preclusion is asserted was a party to or in privity with a party to the prior adjudication; (ii) the issue decided in the prior adjudication was identical to the one presented in the instant action; (iii) the issue in the first action was completely, fully, and fairly litigated; and (iv) the first suit resulted in a final judgment on the merits.

*Id.* (alterations omitted) (internal quotation marks omitted).

¶ 24 The district court did not specifically analyze the elements of issue preclusion. Instead, the district court simply held that the plaintiffs were "collaterally estopped from pursuing" any challenge to the discovery orders because Yanaki "had an obligation to challenge the order[s] if he felt [they] were illegal or even improperly issued, especially because Iomed's case depended on [them]."

¶ 25 Issue preclusion cannot bar Yanaki and Moss's claims in this case, however, because not all of the elements of issue preclusion are satisfied. Specifically, the validity of the civil discovery orders was not "completely, fully, and fairly litigated" in Iomed's suit against Yanaki. Instead, as the district court noted, Yanaki "raised thirty-one defenses and included three counts in his counterclaim, none of which dealt with the discovery order[s]." Unlike claim preclusion,

where the court may consider whether a claim "could and should have been raised," *Allen*, 2011 UT 44, ¶ 6, 259 P.3d 1049 (internal quotation marks omitted), issue preclusion exists to "prevent[ ] *previously litigated* issues from being relitigated," *Gudmundson v. Del Ozone*, 2010 UT 33, ¶ 30, 232 P.3d 1059 (emphasis added) (internal quotation marks omitted). Thus plaintiffs' claims in this case are not barred by either branch of res judicata.

## II. JUDICIAL PROCEEDINGS PRIVILEGE

¶ 26 The court of appeals did not consider the judicial proceedings privilege because it concluded that res judicata entirely barred Yanaki and Moss's suit. The district court "recognize[d]" that Parr Brown and its attorneys "were operating within the framework of [the judicial proceedings] privilege," but did not rest its decision on the privilege. We may nonetheless affirm the district court's dismissal on this ground. *See, e.g., R.E. v. B.B. (State ex rel. T.E.)*, 2011 UT 51, ¶ 36, 266 P.3d 739 ("It is well settled that an appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record." (internal quotation marks omitted)); *see also Bennett v. Jones, Waldo, Holbrook & McDonough*, 2003 UT 9, ¶ 67 & n. 8, 70 P.3d 17 (noting that the judicial proceedings privilege barred plaintiff's claim even where the district court had not relied on the privilege in dismissing the claim).

¶ 27 Parr Brown argues that Utah's judicial proceedings privilege should be extended to attorney *conduct*, rather than merely *statements* made in the course of judicial proceedings, if that conduct relates to the proceedings. We agree.[5]

---

correct, but beside the point, that Moss could have sought to intervene or petitioned for extraordinary writ. In order to establish the first element of claim preclusion, the inquiry must focus on whether Moss was in privity with Yanaki. *See, e.g., Brigham Young Univ.*, 2005 UT 19, ¶ 29, 110 P.3d 678. Because we hold that the first element of claim preclusion is not satisfied, however, we do not address whether Moss was in privity with Yanaki.

5. Yanaki and Moss argue that the district court erred in even considering the affirmative defense of the judicial proceedings privilege in granting judgment on the pleadings. In so doing, Yanaki and Moss conflate the procedural posture of a 12(b)(6) motion to dismiss with a 12(c) motion for judgment on the pleadings. When a defendant moves to dismiss for failure to state a claim under rule 12(b)(6), the motion is based on the insufficiency of the plaintiff's complaint standing alone. *See, e.g., Salt Lake City Corp. v. Big Ditch*

¶ 28 Historically, the judicial proceeding privilege in Utah has been used to "immunize[ ] certain statements that are made during a judicial proceeding from defamation claims." *Pratt v. Nelson*, 2007 UT 41, ¶ 27, 164 P.3d 366. We have extended the privilege beyond defamation claims to include "all claims arising from the same statements." *Bennett*, 2003 UT 9, ¶ 67, 70 P.3d 17 (internal quotation marks omitted).

¶ 29 Whether the privilege extends to *conduct* as well as *statements* occurring in the course of judicial proceedings is an issue of first impression in Utah. To answer this question, we look to the policies underlying the judicial proceedings privilege, as well as how other states have addressed this issue.

¶ 30 We have noted that Utah's judicial proceedings privilege has broad underlying principles. "The privilege is intended to promote the integrity of the adjudicatory proceeding and its truth finding processes." *Pratt*, 2007 UT 41, ¶ 27, 164 P.3d 366 (internal quotation marks omitted). It "exists for the purpose of preserving both the integrity of the judicial proceeding and the associated quest for the ascertainment of truth that lies at its heart." *O'Connor v. Burningham*, 2007 UT 58, ¶ 30, 165 P.3d 1214. Furthermore, the privilege "applies to every step in the proceeding until final disposition." *Pratt*, 2007 UT 41, ¶ 29, 164 P.3d 366 (internal quotation marks omitted).

¶ 31 Other courts have elaborated on the principles underlying the judicial proceedings privilege. The privilege "is the backbone to an effective and smoothly operating judicial system." *Loigman v. Twp. Comm. of Middletown*, 185 N.J. 566, 889 A.2d 426, 436 (2006) (internal quotation marks omitted). The West Virginia Supreme Court identified eight policy considerations underlying the judicial proceedings privilege. *Clark v. Druckman*, 218 W.Va. 427, 624 S.E.2d 864, 870 (2005). The Restatement (Second) of Torts recognizes that the privilege "is based upon a

public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients." RESTATEMENT (SECOND) OF TORTS § 586 cmt. a (1977).

¶ 32 Numerous courts have, in considering the issue for the first time, recognized the wisdom of expanding this privilege to encompass more than just statements occurring during the course of judicial proceedings. For example, the Florida Supreme Court held that the judicial proceedings privilege "must be afforded to any act occurring during the course of a judicial proceeding ... so long as the act has some relation to the proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So.2d 606, 608 (Fla.1994). The court reasoned that the "rationale behind the [privilege] afforded to defamatory statements is equally applicable to other misconduct occurring during the course of a judicial proceeding." *Id.* The court therefore concluded that attorneys must "be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct." *Id.*

¶ 33 Texas has likewise extended the privilege to cover conduct. *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.2005). The Court of Appeals of Texas recognized that an attorney's "duty to zealously represent his clients within the bounds of the law" required that the privilege extend to "actions taken in connection with representing a client in litigation." *Id.* The court reasoned that "[i]f an attorney could be held liable to an opposing party for statements made or actions taken in the course of representing his client, he would be forced constantly to balance his own potential exposure against his client's best interest." *Id.* The court further noted that "[s]uch a conflict hampers the resolution of disputes through

*Irrigation Co.*, 2011 UT 33, ¶¶ 23–24, 258 P.3d 539. By contrast, a motion for judgment on the pleadings under rule 12(c) invites consideration of all pleadings—namely, the plaintiff's complaint and the defendant's answer—in determining whether dismissal is appropriate. *See* UTAH R. CIV P. 12(c) ("After the pleadings are closed

... any party may move for judgment on the pleadings."); *see also, e.g., Francis v. State*, 2010 UT 62, ¶ 11, 248 P.3d 44 (evaluating whether motion for judgment on the pleadings was properly granted based on affirmative defense of governmental immunity).

the court system and the attainment of justice." *Id.*

¶ 34 The West Virginia Supreme Court similarly saw "no reason to distinguish between *communications* made during the litigation process and *conduct* occurring during the litigation process." *Clark,* 624 S.E.2d at 870. And most recently, the Idaho Supreme Court reached the same conclusion, holding that the privilege "shall be found to protect attorneys against civil actions which arise as a result of their conduct or communications in the representation of a client, related to a judicial proceeding." *Taylor v. McNichols,* 149 Idaho 826, 243 P.3d 642, 655 (2010).

■ ¶ 35 Consistent with the broad policy concerns underlying the judicial proceedings privilege, we agree with these jurisdictions that the privilege should extend to an attorney's conduct occurring in the course of judicial proceedings. The privilege thus embraces the principle that "an attorney acting within the law, in a legitimate effort to zealously advance the interests of his client, shall be protected from civil claims arising due to that zealous representation." *Id.* at 656. We now clarify the contours of the privilege as applied to attorneys, including what plaintiffs must plead to overcome it.

¶ 36 When an attorney takes actions or makes statements in the course of judicial proceedings, "[i]t is presumed that an attorney who is acting or communicating in relation to his representation of a client is acting on behalf of that client and for that client's interests." *Id.* at 657. "Lawyers necessarily exercise a wide degree of discretion in performing their duties in the course of judicial proceedings, and must be free to pursue the best course charted for their clients without the distraction of a vindictive lawsuit looming on the horizon." *Loigman,* 889 A.2d at 438. As noted by other courts, to hold otherwise

"would invite attorneys to divide their interest between advocating for their client and protecting themselves from a retributive suit." *Taylor,* 243 P.3d at 657; *accord Alpert,* 178 S.W.3d at 405. Thus, the privilege presumptively attaches to conduct and communications made by attorneys on behalf of their clients in the course of judicial proceedings.

■ ¶ 37 As other courts have noted, however, the privilege does not provide a "blanket immunity against all claims raised against [attorneys] merely because they are acting as [attorneys] in litigation." *Taylor,* 243 P.3d at 655. Rather, "where attorneys are being sued by the opponent of their client in a current or former lawsuit, and that suit arises out of the attorneys' legitimate representation of that client pursuant to that litigation, the privilege does apply." *Id.* But the judicial proceedings privilege is not without limits. Where a plaintiff pleads that an "attorney has engaged in independent acts, that is to say acts outside the scope of his representation of his client's interests, or has acted solely for his own interests and not his client's," the privilege can be lost. *Id.* at 657; *accord Clark,* 624 S.E.2d at 871. Additionally, where an attorney has committed fraud or otherwise acted in bad faith, which is inherently "acting in a manner foreign to his duties as an attorney," the privilege will not shield an attorney from civil liability. *Taylor,* 243 P.3d at 656; *accord Vega v. Jones, Day, Reavis & Pogue,* 121 Cal.App.4th 282, 17 Cal.Rptr.3d 26, 31–32 (2004); *Alpert,* 178 S.W.3d at 406; *Clark,* 624 S.E.2d at 870. An attorney may also be liable for the torts of abuse of process or malicious prosecution, but only if the attorney acted outside the scope of representing his client or acted for his own interests.[6]

---

6. "A claim for abuse of process requires the plaintiff to show (1) that the defendant used legal process, (2) to accomplish an improper purpose or purpose for which that process was not designed, (3) causing the plaintiff's harm." *Mountain W. Surgical Ctr., L.L.C. v. Hosp. Corp. of Utah,* 2007 UT 92, ¶ 11, 173 P.3d 1276. Further, "a party must allege both an ulterior purpose and a wilful act in the use of the process not proper in the regular conduct of the proceeding." *Hatch v. Davis,* 2006 UT 44, ¶ 36, 147 P.3d 383 (internal quotation marks omitted). "To satisfy the 'wilful act' requirement, a party must point to conduct independent of legal process itself that corroborates the alleged improper purpose." *Id.* ¶ 39. "Use of legal process with a bad motive alone does not defeat that right; a corroborating act of a nature other than legal process is also necessary." *Id.* (internal quotation marks omitted). "The 'wilful act' element can be understood as an obligation imposed on the complaining party to allege that the tortfea-

¶ 38 "[T]he extraordinary scope of the [judicial proceedings] privilege is mitigated to some degree by the comprehensive control that trial judges exercise over judicial proceedings, by the adversarial system, and by the sanctions faced by wayward attorneys through our disciplinary system." *Loigman*, 889 A.2d at 438. We agree with the West Virginia Supreme Court that "our *Rules of Civil Procedure*, our *Rules of Professional Conduct*, and the court's inherent authority provide adequate safeguards to protect against abusive and frivolous litigation tactics." *Clark*, 624 S.E.2d at 871; *accord Levin*, 639 So.2d at 608–09.

### III. PLAINTIFFS' TORT CLAIMS

 ¶ 39 Parr Brown argues that if we extend the judicial proceedings privilege to encompass conduct, then all of Yanaki and Moss's tort claims fail because their complaint does not allege that Parr Brown's attorneys committed fraud or otherwise acted outside the scope of their representation of Iomed. We agree.

¶ 40 We first note that the judicial proceedings privilege presumptively applies to Parr Brown's attorneys in this case. The complained-of actions stem from the execution of civil discovery orders acquired in the course of Iomed's suit against Yanaki. According to the first amended complaint, the Parr Brown attorneys "agreed to help their client, Iomed," acquire and execute the Order. Parr Brown's attorneys properly filed the motions, received the Order, and then executed the Order pursuant to its terms. The attorneys were acting solely within the scope of their representation of Iomed, and therefore the judicial proceedings privilege presumptively applies to bar plaintiffs' claims. We therefore examine whether Yanaki and Moss have pled sufficient facts to overcome the judicial proceedings privilege on any of their tort claims.

¶ 41 The first amended complaint alleges that "Iomed conspired with the named defendants to cause the misuse of a legal process and the Illegal Search and Seizure by the Police, pursuant to which the Police and the co-conspirators, some of whom are the named defendants herein, committed the torts alleged herein." This allegation, accepted as true, severely restricts the ability of plaintiffs' claims to overcome the judicial proceedings privilege. If Parr Brown and its attorneys acted in concert with Iomed, as alleged, then they were not acting beyond the scope of their representation of Iomed.

¶ 42 The first amended complaint is remarkably devoid of any allegations about the Parr Brown attorneys' intentions, statements, or actions beyond serving Iomed's interests. The complaint notes that three Parr Brown attorneys "caused to be filed" the motion seeking the Order, and that they did so knowing "that the relief they sought was illegal under both the" U.S. and Utah Constitutions. The complaint later alleges that the Parr Brown attorneys "agreed to help their client, Iomed," pursue the Order to seek "legal process for illegal purposes and with ulterior motivations." In the only specific statement attributed to a Parr Brown attorney, when Moss declined the initial request for entry, the complaint alleges that the attorney present at the plaintiffs' home said, "We can come in now, or we can come in later." The attorney then "advised Moss that he was going to get a further legal process" in light of Moss's refusal to allow entry into the home. Finally, the attorney later accompanied the sheriff's deputy and others when they finally entered the home to execute the Order. All of the statements and actions were in furtherance of the attorneys' representation of their client.

 ¶ 43 In reviewing the first amended complaint, we see no basis for overcoming the judicial proceedings privilege. Yanaki and Moss have failed to allege any acts by Parr Brown's attorneys that exceed the scope of their representation of Iomed. Nor does the complaint allege that Parr Brown's

---

sor has confirmed through his conduct his improper ulterior motive for employing legal process against the plaintiff." *Id.* ¶ 40.

In the context of a suit against an attorney for abuse of process, a plaintiff must therefore plead facts sufficient to show (1) that the attorney engaged in "conduct independent of legal process itself that corroborates the alleged improper purpose," *id.* ¶ 39, *and* (2) that conduct must reflect the attorney acting beyond the scope of her representation of the client or in her own interests.

attorneys committed fraud or acted in their own interests. Indeed, it appears that Parr Brown's attorneys at all times acted in Iomed's interests—even if, as the complaint alleges, "Iomed desired to misuse a legal process to cause an illegal raid on" plaintiffs' home. We therefore hold that the judicial proceedings privilege bars all of plaintiffs' claims in this case.[7]

## CONCLUSION

¶ 44 Both the district court and court of appeals held that res judicata precluded the plaintiffs' claims against Parr Brown. We first hold that neither branch of res judicata—claim preclusion or issue preclusion—apply in this case, and thus disagree with the lower courts in this respect.

¶ 45 We also hold that the judicial proceedings privilege in Utah extends to attorneys' conduct, as well as statements, occurring in the course of judicial proceedings, so long as the acts or statements occur within the scope of attorneys' representation of their clients. The privilege does not apply where attorneys act beyond the scope of representation of their clients, or where they act in their own interest.

¶ 46 In this case, the judicial proceedings privilege applies to Parr Brown's attorneys' conduct. The complaint fails to allege that Parr Brown's attorneys ever acted beyond the scope of representing their client in pursuing and executing civil discovery orders against plaintiffs. We therefore hold that all of plaintiffs' claims are barred by the privilege. On that basis, we affirm on alternate grounds the result of the judgment of the court of appeals, but vacate the court of appeals' opinion.

Having recused themselves, Chief Justice DURRANT, Justice PARRISH, and Justice LEE do not participate herein.

District Judge CONNORS, District Judge DiREDA, and District Judge EYRE sat.

---

7. We note that the civil discovery orders issued during Iomed's suit against Yanaki appear on their face to have been unusual. Because we hold that the plaintiffs' claims do not overcome the judicial proceedings privilege, however, we need not address the legality of those orders.