PEARCE, Judge
(dissenting):
124 Because Husband failed to meet his burden of demonstrating that the denial of Grandmother's initial ex parte petition for a civil stalking injunction constituted a final judgment on the merits, I respectfully dissent.
[ 25 Grandmother argues that the denial of an ex parte civil stalking injunction petition can never be considered a final judgment. The district court appeared to accept that argument, stating, "I don't view the denial of the ex parte, the application for the stalking injunction to constitute an adjudicatory proceeding that would rise to the level of collateral estoppel or res judicata." The majority persuasively holds that, contrary to Grandmother's assertion, in some instances the denial of an ex parte civil stalking petition can act as a final judgment for claim preclusion purposes.[16] That, however, does not resolve. the question of whether Husband met his burden of establishing that the denial the First District Court issued was a final judgment on the merits.
126 A party seeking to invoke collateral estoppel must prove each of its elements. Busch v. Busch, 2003 UT App 131, ¶ 6, 71 P.3d 177. As a result, Husband bore the burden of establishing that the denial of Grandmother's initial petition constituted a "final judgment on the merits." See, eg., Moss v. Parr Waddoups Brown Gee & Loveless, 2012 UT 42, ¶ 21, 285 P.3d 1157 (citation and internal quotation marks omitted). Husband did not even attempt to meet this burden in the district court. His motion to dismiss Grandmother's second petition did not use the terms "res judicata," "collateral estoppel," "issue preclusion," or "final order." Instead he argued that the petition filed in the Fourth District Court was "judge shopping." Husband made the same argument at the motion hearing, repeating his assertion that Grandmother's second petition should be dismissed because "iJt's clearly judge shopping."
127 Had he tried, Husband would have been unable to shoulder his burden of demonstrating that the denial was a final judgment on the merits. "'On the merits is a term of art that means that a judgment is rendered only after a court has evaluated the relevant evidence and the parties' substantive arguments." State v. Sommerville, 2013 UT App 40, ¶ 32, 297 P.3d 665 (citation and internal quotation marks omitted). A final judgment on the merits "ends the controversy between the parties" Salt Lake City Corp. v. Layton, 600 P.2d 538, 539 (Utah 1979). A judgment is "on the merits" if it "completely disposes of an underlying cause of action, or determines that plaintiff has no cause of action." Dennis v. Vasquez, 2003 UT App 168, ¶ 8, 72 P.3d 135 (emphasis omitted) (citation and internal quotation marks omitted). In Dennis, we held that a judgment was final and on the merits because it was "clear that the judgment was *1068 final and precluded [the plaintiff] from pursuing any remedy or initiating any further proceedings in small claims court." Id. 17. Husband therefore needed to establish that the denial was intended to end the controversy-that is, the legal controversy-between himself and Grandmother. By its express language, the denial did not.
128 The First District Court denied Grandmother's first petition using the form the Utah Code requires the Administrative Office of the Courts to prepare. See Utah Code Ann. § 77-8a-101(8) (LexisNexis 2012). The form, titled "Denial of Civil Stalking Injunction," contains various preprinted reasons for the denial of a petition, each with a corresponding box for the district court to check if applicable. By checking these boxes, a court can indicate that it "will not grant your Request for Civil Stalking Injunction" for a variety of reasons, including "Corroborating documents are missing"; "You did not describe the specific events and dates of the alleged stalking"; and "[the Court does not have jurisdiction because neither party resides nor did the events happen in this county‘”
29 Here, the First District Court denied Grandmother's petition by checking the box next to the language "The events you de-seribed are not stalking because. ..." Within that section, the court checked two subsections: (1) "the Respondent did not make any threats, and no threats were implied by Respondent's conduct"; and (2) "other (explain)." In the "other" subsection, the court handwrote, "the last episode was April 27, 2012 & Petitioner is seeking a stalking injunction 4 months later so no immediate fear or alleged threats." ‘
1 30 In its denial order, the First District Court also checked the separate box entitled "Other (explain)." Next to that, the court penned, "Petitioner may consider other legal proceedings to restrain respondent's alleged conduct."[17] The majority dismisses this comment as "at most, an advisory opinion." See supro 118. Grandmother argues that the language is a window into the First District Court's intent that reveals that the court did not intend the order to fully resolve the legal issues between the parties arising out of the alleged conduct. Grandmother appears to suggest that this language is akin to a dismissal without prejudice to refile "other legal proceedings." The majority opines that Grandmother's proposed interpretation of that language is "far from obvious and highly speculative." See id. The majority then suggests that the language could have meant that Grandmother was free to present additional information concerning subsequent stalking events. Rather than speculate about what the First District Court had in mind, I prefer to confess that it is not clear what that court intended. And because it is not clear that the order embodies a final judgment, I would conclude that Husband failed to establish claim preclusion.
131 Our supreme court has recognized that "collateral estoppel can yield an unjust outcome if applied without reasonable consideration and due care." Buckner v. Kennard, 2004 UT 78, ¶ 15, 99 P.3d 842. In 2005, eighty-four percent of people seeking civil stalking injunctions in Utah courts did not have the benefit of counsel to assist them. See Utah Judicial Council, Final Report-2006 Survey of Self Represented Parties in the Utah State Courts at 2 (2006), available at http://www It is not difficult to conjure scenarios in which zealous application of res judicata principles to the denial of pro se stalking injunction petitions would lead to unjust results.
32 For example, a pro se petitioner who mistakenly believes she need only allege a single stalking incident and receives a form denial with the check next to the boxes that read "The events you described are not stalking because...." and "they were not repeated" will, under the majority's holding, be prohibited from refiling unless and until a *1069 new stalking event occurs. That pro se petitioner will have to await a new stalking event even if she could have initially alleged multiple stalking incidents, because res judicata principles prevent the litigation of claims that could or should have been asserted in the first instance. See, eg., Gillmor v. Family Link, LLC, 2012 UT 38, ¶ 10, 284 P.3d 622. In my opinion, that would constitute an unjust outcome-an unjust outcome that can be avoided by simply refusing to apply preclu-sive effect to the denial of an ex parte civil stalking injunction petition unless it is clear that the denial was intended to operate as a final judgment on the merits.
' 83 Our supreme court has stated that the policies underlying res judicata include: "(1) preserving the integrity of the judicial system by preventing inconsistent outcomes; (2) promoting judicial economy by preventing previously litigated issues from being reliti-gated; and (8) protecting litigants from harassment by vexatious litigation." Buckner, 2004 UT 78, ¶ 14, 99 P.3d 842. In the context of ex parte civil stalking injunctions, none of these purposes are undercut by requiring those seeking to benefit from the application of res judicata principles to actually establish that the district court intended its denial to be a final judgment and by resolving ambiguities in favor of the nonmov-ing party. All of the stated purposes can just as easily be promoted by requiring a district court to make explicit that its denial of a petition for a civil stalking injunction is intended to be a final judgment on the merits.
1 34 For these reasons, I dissent.

. The majority opinion does not reach the question of whether the denial of a petition for an ex parte civil stalking injunction could ever be considered to have "completely, fully, and fairly litigated" the issues raised in a civil stalking injunction petition for issue preclusion purposes. See Moss v. Parr Waddoups Brown Gee & Loveless, 2012 UT 42, ¶ 23, 285 P.3d 1157 (citation and internal quotation marks omitted).

. The form also has a box that reads, "The Court will reconsider if a response is filed." The First District Court did not check that box, which suggests that it may have considered the matter to be concluded. However, the court's comment regarding other legal proceedings creates an ambiguity concerning the finality of the order. For the reasons discussed herein, such ambiguity only serves to frustrate Husband's ability to meet his burden of demonstrating that the dismissal is a final order.