2014 UT App 66

**William Tracy FOWLER, Plaintiff and Appellant,**

v.

**Paul TEYNOR and Intermountain MRO Services, Inc., Defendants and Appellees.**

**No. 20121097–CA.**

Court of Appeals of Utah.

March 20, 2014.

Rehearing Denied May 8, 2014.

April L. Hollingsworth, for Appellant.

Justin T. Toth and Emily S. Loeffler, for Appellees.

Judge JOHN A. PEARCE authored this Opinion, in which Judge JAMES Z. DAVIS and Senior Judge RUSSELL W. BENCH concurred.[1]

## Opinion

PEARCE, Judge:

¶ 1 William Tracy Fowler appeals from the district court's entry of summary judgment in favor of Paul Teynor and Intermountain MRO Services, Inc. (IMRO). Fowler claims the district court erred in finding that principles of res judicata barred his claims against Teynor and IMRO. We affirm.

## BACKGROUND

¶ 2 Fowler worked as a mail-room supervisor at Westminster College (Westminster). In 2001, he began having back problems that necessitated several surgeries. After the last surgery in April 2004, Fowler realized that he was addicted to his prescription pain medication. He informed Westminster of his addiction and went on short-term disability to attend a rehabilitation program. His working relationship with Westminster deteriorated over the next year, and in October 2005, Westminster asked Fowler to take a drug test. Fowler agreed, and Westminster contracted with a local testing company, IMRO, to perform a urinalysis.

¶ 3 Teynor, a doctor who owns IMRO and serves as its medical review officer, reviewed the lab results from Fowler's drug test. The results showed the presence of certain prescription drugs, including the muscle relaxant carisoprodol. Teynor knew that Fowler had a prescription for carisoprodol but informed Westminster that Fowler had reported taking twice the amount prescribed. Teynor also reported to Westminster that Fowler was taking several other prescription drugs and therefore posed a safety risk. Fowler alleges that Teynor did not inform Westminster of the limitations of urinalysis in detecting the amount or effect of drugs in a person's system or that Fowler's self-reported carisoprodol use, while greater than prescribed, fell within the standard recommended daily dosage. On November 1, 2005, Westminster terminated Fowler's employment, citing as its reason the results of the drug test.

¶ 4 Fowler sued Westminster in federal court, alleging that Westminster had discriminated against him and ultimately fired him because of a disability—his addiction—in violation of the Americans with Disabilities Act (the ADA). Shortly thereafter, Fowler initiated this state court action against Teynor and IMRO, alleging various causes of action including negligence arising from Teynor and IMRO's handling of the drug test and their reporting of results with false or incomplete information to Westminster.

¶ 5 Fowler's federal case proceeded to trial first. At the federal jury trial, Westminster defended itself by claiming that the result of the drug test, and not discrimination, was the reason it terminated Fowler. The jury specifically rejected that defense and found, as evidenced by its response on the verdict form, that "Westminster did not honestly believe and act in good faith on its stated reasons for terminating Mr. Fowler, making those reasons pretext for discrimination against Mr. Fowler based on his disability." The jury determined that Westminster had violated the ADA when it terminated Fowler, and the jury awarded him $500,000 in compensatory damages.[2]

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

2. Pursuant to the ADA, Fowler's damages award

¶ 6 After trial, Westminster moved for judgment as a matter of law, arguing in part that it had proved at trial that it relied in good faith on the results of the drug test in terminating Fowler. The federal court denied the motion, reasoning that the jury had found that "Westminster did not honestly believe and act in good faith on its stated reasons for terminating Fowler." *Fowler v. Westminster Coll. of Salt Lake*, No. 2:09–cv–591–DN, 2012 WL 4069654, at *3 (D.Utah Sept. 17, 2012). The federal court further ruled that Fowler had presented evidence at trial "on which a reasonable jury could conclude . . . that the drug test was pretext for discrimination." *Id.*

¶ 7 Shortly after the judgment against Westminster in the federal case, Teynor and IMRO filed a motion for summary judgment in this case, arguing that Fowler's claims against them were barred by issue preclusion in light of the federal jury verdict and resulting judgment[3] The motion did not focus on any specific factual question that had been decided in the federal action but argued broadly that Fowler had already litigated the issue of his wrongful termination. Fowler's opposition to the motion argued that Teynor and IMRO's negligence had not been litigated in the federal case. Fowler also argued that the federal case focused on whether Westminster was liable for discrimination under the ADA and did not decide the question of who else might also be liable for his damages.

¶ 8 The district court granted Teynor and IMRO's motion for summary judgment, concluding that the issue of "the alleged wrongful termination of [Fowler's] employment with Westminster" had been litigated in the

federal case and that Teynor and IMRO had established each element of issue preclusion.[4] In its order granting summary judgment, the district court stated that the federal case had "clearly determined that the drug test was a *'pretext* for discrimination' and [was] not the basis for [Fowler's] termination." Fowler appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 9 Fowler argues that his claims against Teynor and IMRO are not barred by issue preclusion and that the district court therefore erred when it granted summary judgment. "Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Salt Lake City Corp. v. Big Ditch Irrigation Co.*, 2011 UT 33, ¶ 18, 258 P.3d 539. "We review a district court's grant of summary judgment for correctness and afford no deference to the court's legal conclusions." *Id.; see also Zufelt v. Haste, Inc.*, 2006 UT App 326, ¶ 8, 142 P.3d 594 (stating that we review the application of issue preclusion "for correctness, according no particular deference to the trial court").

## ANALYSIS

¶ 10 The sole issue in this appeal is whether the district court correctly applied the doctrine of issue preclusion to bar Fowler's suit against Teynor and IMRO[5] Generally speaking, issue preclusion prevents the relitigation of facts and issues that have been previously determined. *Moss v. Parr Wad-*

---

against Westminster was capped at $300,000. Fowler was also awarded other damages, such as back pay, but the amount of those additional damages is not clear from the record in this case.

3. By this time, Fowler had twice amended his original Complaint. His Second Amended Complaint alleged only two claims against Teynor and IMRO: negligence and negligent misrepresentation.

4. Prior to the district court's ruling, Teynor and IMRO filed another motion for summary judgment specifically arguing that Fowler could not prove causation of his damages in this case because the federal case established that Westmin-

ster's discrimination caused those damages. The district court granted the motion for summary judgment on issue preclusion before Fowler responded to the more specific causation motion.

5. Fowler also addresses the issue of judicial estoppel, arguing that his suit against Teynor and IMRO is not barred by that doctrine. *See generally Café Rio, Inc. v. Larkin–Gifford–Overton, LLC*, 2009 UT 27, ¶ 42, 207 P.3d 1235 (outlining the elements of judicial estoppel). However, the district court did not rely on judicial estoppel in its summary judgment ruling, and we do not address the issue here.

*doups Brown Gee & Loveless,* 2012 UT 42, ¶ 23, 285 P.3d 1157.

> Issue preclusion applies only when the following four elements are satisfied: (i) the party against whom issue preclusion is asserted was a party to or in privity with a party to the prior adjudication; (ii) the issue decided in the prior adjudication was identical to the one presented in the instant action; (iii) the issue in the first action was completely, fully, and fairly litigated; and (iv) the first suit resulted in a final judgment on the merits.

*Id.* (citation and internal quotation marks omitted).[6]

¶ 11 The district court concluded that Teynor and IMRO had established each of the four elements of issue preclusion. On appeal, Fowler does not dispute that the first element is satisfied, as Fowler was a party to both lawsuits and is the party against whom issue preclusion is being asserted. However, Fowler argues that the district court erred in concluding that Teynor and IMRO established the final three elements. Specifically, Fowler argues that the issues in his case against Teynor and IMRO are not identical to the issues that he litigated against Westminster, were not fully and fairly litigated in the first action, and were not decided by a final judgment on the merits.

### I. Identity of Issues

¶ 12 Fowler first argues that the issues litigated in his suit against Westminster are not identical to those he raises in this case. Fowler contends that the prior action did not address "whether Dr. Teynor had a duty to Mr. Fowler that he breached when he incorrectly reported to Westminster that Mr. Fowler told him he had taken twice the recommended amount of [carisoprodol], nor did [it] determine whether this conduct by

IMRO and/or Dr. Teynor caused him damages."

¶ 13 Fowler is correct that the jury in the prior action did not decide whether Teynor or IMRO breached any duty they may have owed to Fowler. We conclude, however, that the federal jury verdict and judgment conclusively determined *why* Westminster terminated Fowler. Because Fowler does not allege damages arising from anything other than his termination, the federal jury necessarily resolved the issue of whether Teynor and IMRO's actions damaged Fowler.

¶ 14 Fowler notes that there are significant substantive differences between his claim of disability discrimination against Westminster and his negligence-based claims against Teynor and IMRO. However, the applicability of issue preclusion "does not depend on whether the claims for relief are the same." *Robertson v. Campbell,* 674 P.2d 1226, 1230 (Utah 1983). " '[W]hat is critical is whether the *issue* that was actually litigated in the first suit was essential to resolution of that suit and is the same factual issue as that raised in the second suit.' " *Collins v. Sandy City Bd. of Adjustment,* 2000 UT App 371, ¶ 12, 16 P.3d 1251 (emphasis added) (quoting *Robertson,* 674 P.2d at 1230).

> "[I]t is not the identity of the thing sued for, or of the cause of action, which determines the conclusiveness of a former judgment upon a subsequent action, but merely the identity of the issue involved in the two suits. If an issue presented in a subsequent suit between the same parties or their privies is shown to have been determined in a former one, the question is res judicata [or collateral estoppel], although the actions are based on different grounds, or tried on different theories, or are instituted for different purposes and seek different relief."

---

**6.** Teynor and IMRO correctly note that issue preclusion questions are governed by federal common law where, as here, the issue was first decided by a federal court. *See Oman v. Davis Sch. Dist.,* 2008 UT 70, ¶ 28 n. 5, 194 P.3d 956. Nevertheless, we elect to address Fowler's appeal under Utah case law because the parties have briefed the matter under state law and because "the legal analysis under Utah common law is virtually identical to that under federal common law" and "our ultimate conclusion would be the same regardless of whether we applied federal or state law." *See id.; see also Dodge v. Cotter Corp.,* 203 F.3d 1190, 1198 (10th Cir.2000) (describing the four elements of federal issue preclusion as identity of issues, final adjudication on the merits, identity of precluded party, and opportunity for full and fair litigation).

*Robertson,* 674 P.2d at 1230 (alterations in original) (quoting *Pickeral v. Federal Land Bank,* 177 Va. 743, 15 S.E.2d 82, 85 (1941)). Thus, the question is whether an issue that was determined in the resolution of the federal ADA matter has been raised again in the state court action.

¶ 15 The trial of Fowler's ADA claims against Westminster proceeded under the burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* framework, Fowler bore the initial burden of making a prima facie showing of discrimination by Westminster. *See Carter v. Pathfinder Energy Servs., Inc.,* 662 F.3d 1134, 1141 (10th Cir.2011). After he made that showing, the burden shifted to Westminster to identify a legitimate, non-discriminatory reason for Fowler's termination. *See id.* When Westminster identified Fowler's drug test and Teynor's interpretation of the test results as its legitimate reason for firing Fowler, the burden shifted back to Fowler to prove that Westminster's "proferred reason [was] in fact a pretext designed to mask discrimination." *See id.*

¶ 16 Fowler successfully carried his burdens in the federal litigation, as the jury expressly found that Westminster's alleged reliance on the drug test was a "pretext for discrimination against Mr. Fowler based on his disability." The jury's pretext finding determined that Westminster did not terminate Fowler's employment due to the drug test or its results as reported by Teynor and that the real reason for Fowler's termination was disability discrimination by Westminster. *See Trujillo v. University of Colo. Health Scis. Ctr.,* 157 F.3d 1211, 1215 (10th Cir.1998) ("A reason is not a ' "pretext for discrimination" unless it is shown both that the reason was false, and that discrimination was the real reason.'" (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993))).

¶ 17 In the present action, Fowler alleges that it was Teynor and IMRO's negligence and negligent misrepresentations regarding the drug test that caused him to suffer damages. Specifically, Fowler alleges in his Second Amended Complaint that "Westminster terminated [his] employment *based on* Dr. Teynor's representations." (Emphasis added.) With respect to his negligence claim, Fowler pleaded that he was "terminated from his employer due to [Teynor and IMRO's] breaches of their duties of care." Similarly, with respect to his negligent misrepresentation claim, he pleaded that "Westminster did rely on the information Dr. Teynor provided, by terminating [his] employment." The only damages that Fowler identifies are those flowing from the termination of his employment with Westminster.[7]

¶ 18 Thus, in order to prevail on his claims against Teynor and IMRO, Fowler must prove that Westminster acted upon the drug test and the alleged negligent misrepresentations. Westminster placed this issue squarely before the federal jury by arguing that it terminated Fowler in good faith reliance on the drug test. The jury specifically considered and rejected that argument by finding that Westminster did not honestly believe or act in good faith on the drug test results.

¶ 19 The Utah Supreme Court has considered and rejected a similar attempt to avoid the preclusive effect of a prior finding. *Harline v. Barker,* 912 P.2d 433 (Utah 1996), involved an attorney malpractice action filed after a bankruptcy case. The bankruptcy court refused to grant Harline a discharge due to inaccuracies in his statement of affairs and financial schedules. *Id.* at 435–36. Harline argued that the inaccuracies were the result of his attorneys' negligence in preparing the schedules, on which he relied in good faith. The bankruptcy court rejected the good faith reliance argument and determined that Harline had "transferred property with

---

7. Both of Fowler's claims stated only that he "suffered significant damages due to his termination, which were proximately caused by [Teynor and IMRO]." The Second Amended Complaint also sought punitive damages, but punitive damages may not be awarded unless a plaintiff first establishes non-punitive damages against a defendant. *See* Utah Code Ann. § 78B–8–201 (LexisNexis 2012) ("Except as otherwise provided by statute, punitive damages may be awarded only if compensatory or general damages are awarded....").

the intent to hinder, delay, or defraud creditors and that he knowingly and fraudulently made a false oath, even if [counsel] negligently prepared Harline's statement and bankruptcy schedules." *Id.* at 442.

¶ 20 Harline then sued his bankruptcy attorneys for malpractice in Utah state court, alleging that he was denied his discharge because of their negligence in preparing his submissions to the bankruptcy court. *Id.* at 437. The Utah Supreme Court concluded that Harline's malpractice action was barred by issue preclusion because the bankruptcy court had already determined that it was Harline's fraudulent intent that had prevented discharge. *Id.* at 443. The supreme court concluded that the issue of what caused Harline's damages in his malpractice action—i.e., why the bankruptcy court denied his discharge—was "identical to the issue Harline previously litigated in the bankruptcy trial." *Id.* Indeed, the supreme court stated that it "appears that Harline's sole aim in the . . . malpractice lawsuit is to have a jury reconsider the very issue that was decided by the bankruptcy court in 1988; namely whether Harline acted with fraudulent intent or innocently relied on incompetent attorneys." [8] *Id.*

¶ 21 *Harline*'s analysis is instructive. As in *Harline,* the first litigation here involved a party—Westminster—that could escape liability by demonstrating that it had acted in good faith reliance on others—Teynor and IMRO. *See id.* ("Harline's good faith reliance on [his counsel's] advice and preparation of the statement and schedules was a plausible defense in the bankruptcy discharge hearing."). Also as in *Harline,* Fowler's initial proceeding determined that Westminster had not acted for its stated reason but rather for a different, culpable reason. In *Harline,* the actual reason was Harline's intent to defraud; in this case, it was Westminster's discriminatory motive. The conclusion we reach here is analogous to *Harline*'s holding: issues are identical for res judicata purposes when a party attempts to relitigate the factual question of why something occurred and the newly alleged cause for the occurrence was rejected as a defense in a prior action.

■ ¶ 22 As noted above, Fowler's Second Amended Complaint alleges that he was "terminated from his employer due to [Teynor and IMRO's] breaches of their duties of care" and that "Westminster did rely on the information Dr. Teynor provided, by terminating [his] employment." On appeal, Fowler pivots away from this theory and claims that Teynor and IMRO face liability because they provided Westminster with the " 'legitimate' excuse" it needed to act upon its discriminatory animus. This theory was not asserted in either the Second Amended Complaint or in Fowler's memorandum in opposition to the summary judgment motion. Because this theory was not raised below, we do not consider it here. *See In re K.O.,* 2010 UT App 155, ¶ 6, 238 P.3d 59 ("[A]ppellate courts generally do not consider claims raised for the first time on appeal absent plain error or exceptional circumstances.").

¶ 23 Fowler also contends that testimony elicited in the federal trial suggested collusion among Westminster, Teynor, and IMRO. Fowler asserts that if the district court had not ruled before he responded to the summary judgment motion on causation, he could have presented this evidence to the district court. However, Fowler does not articulate how changing his theory from negligence to "more egregious" conduct should change the issue preclusion analysis. Nor does Fowler explain why he did not present this argument and evidence in opposition to the motion for summary judgment that the district court granted. *Cf. 438 Main St. v. Easy Heat, Inc.,* 2004 UT 72, ¶ 51, 99 P.3d 801 (discussing preservation requirements).

## II.  Full and Fair Litigation

¶ 24 Next, Fowler argues that the issues he seeks to raise against Teynor and IMRO were not "competently, fully, and fairly litigated" in his prior action against Westminster because the issues in the two cases are different. *See Macris & Assocs., Inc. v.*

---

8.  Similarly, Fowler's aim here is to have a jury reconsider whether Westminster relied on Teynor and IMRO in deciding to terminate Fowler.

*Neways, Inc.*, 2000 UT 93, ¶ 37, 16 P.3d 1214 (citation and internal quotation marks omitted). As we have just determined, the issue of whether Westminster terminated Fowler because of the drug test *was* necessarily litigated and determined in the action against Westminster. Thus, we need now determine only whether the litigation of that issue was complete, full, and fair.

¶ 25 We have no difficulty in concluding that the issue was completely, fully, and fairly litigated in the federal action. *Cf. State v. Sommerville*, 2013 UT App 40, ¶ 33, 297 P.3d 665 ("An 'issue is actually litigated' when it 'is properly raised . . . and is submitted for determination, and is determined.'" (omission in original) (quoting Restatement (Second) of Judgments § 27 cmt. d)). At trial, Westminster's defense against Fowler's claim of disability discrimination was that Westminster had terminated Fowler because of the drug test and Teynor's statements explaining the results of the drug test. The jury considered evidence of Teynor and IMRO's actions and statements and determined that Westminster did not honestly believe or act in good faith on the results of the drug test.

¶ 26 The jury squarely determined that Westminster's claimed reliance on the drug test was a pretext for discrimination, and that determination was necessary for the jury's ultimate finding of liability against Westminster. *Cf. Zufelt v. Haste, Inc.*, 2006 UT App 326, ¶¶ 15–16, 142 P.3d 594 (concluding that an issue "was not completely and fully litigated" when it "was not the central issue in the [prior litigation], and was only superficially addressed"). The jury's determination occurred after a full trial on that issue and was sustained by the federal court after Westminster moved for judgment as a matter of law. There is simply no basis upon which we could conclude that the reason for Fowler's termination was not completely, fully, and fairly litigated in the prior action.

### III. Final Judgment on the Merits

¶ 27 Finally, Fowler argues that there has been no final judgment "on the merits" of the issues that he now seeks to litigate against Teynor and IMRO. *See Moss v. Parr Wad-*

*doups Brown Gee & Loveless*, 2012 UT 42, ¶ 23, 285 P.3d 1157 (citation and internal quotation marks omitted). There is no dispute that Fowler's prior suit against Westminster resulted in a final judgment. *See DFI Props. LLC v. GR 2 Enters. LLC*, 2010 UT 61, ¶ 17, 242 P.3d 781 (defining a final judgment as one that disposes of the case as to all the parties and as to the subject matter of the litigation). Nevertheless, Fowler argues that the prior final judgment did not resolve the merits of the issues that he raises in the present case. *See Sommerville*, 2013 UT App 40, ¶ 32, 297 P.3d 665 ("A judgment is upon the merits when it amounts to a declaration of the law as to the respective rights and duties of the parties based on . . . facts and evidence upon which the rights of recovery depend, irrespective of formal, technical, or dilatory objections or contentions." (omission in original) (citation and internal quotation marks omitted)).

¶ 28 Fowler's argument is merely a reinvocation of the identity of issues prong addressed in Part I of this opinion. He relies on an older and differently worded formulation of the issue preclusion test that expressed the final judgment requirement as "the issue must have been decided in a final judgment on the merits in the previous action." *Macris*, 2000 UT 93, ¶ 37, 16 P.3d 1214 (citation and internal quotation marks omitted). However, the purpose of the "final judgment on the merits" prong under either formulation of the test is to establish the finality of the prior determination. *See Moss*, 2012 UT 42, ¶ 23, 285 P.3d 1157 (requiring that "the first suit resulted in a final judgment on the merits" (citation and internal quotation marks omitted)); *see also Macris*, 2000 UT 93, ¶ 37, 16 P.3d 1214. The final judgment prong is not an invitation to take a second look at the identity of issues requirement that is present in both versions of the test. *See Moss*, 2012 UT 42, ¶ 23, 285 P.3d 1157; *Macris*, 2000 UT 93, ¶ 37, 16 P.3d 1214. Fowler's prior lawsuit against Westminster resulted in a final judgment on the merits of that suit, and we reject Fowler's argument to the contrary.

## CONCLUSION

¶ 29 The district court correctly applied the doctrine of issue preclusion to bar Fowler's suit against Teynor and IMRO. All of Fowler's alleged damages arise from his termination by Westminster. Fowler's prior judgment against Westminster conclusively established, after full and fair litigation, that the drug test conducted and reported by Teynor and IMRO was not the reason that Westminster terminated Fowler. Thus, issue preclusion prevents Fowler from asserting in this action that Teynor and IMRO's negligence regarding the drug test led to his termination and resulting damages. For these reasons, we affirm the district court's entry of summary judgment on issue preclusion grounds.