**2017 UT App 96**

## THE UTAH COURT OF APPEALS

NEAL K. OSTLER,
Petitioner,

*v.*

RETIREMENT BOARD AND
SALT LAKE COMMUNITY COLLEGE,
Respondents.

Opinion
No. 20160220-CA
Filed June 15, 2017

Original Proceeding in this Court

Florence M. Vincent and Tara Pincock, Attorneys
for Petitioner

David B. Hansen and Erin G. Christensen, Attorneys
for Respondent Retirement Board

Sean D. Reyes and Erin T. Middleton, Attorneys for
Respondent Salt Lake Community College

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES J. FREDERIC VOROS JR. and DAVID N. MORTENSEN
concurred.

CHRISTIANSEN, Judge:

¶1   Neal K. Ostler petitions for judicial review of the Utah
State Retirement Board's order denying him pension benefits.
He contends that the withdrawal of member contributions he
made over the course of about 15 years should not have resulted
in forfeiture of all 15 years of service credit he accrued. He
further contends that the statute of limitations did not begin to
run on his claim that he was eligible for other service credit,
because he had not yet retired. We conclude that the Board
correctly interpreted the forfeiture statute and that Ostler's other

claims are barred by res judicata. Consequently, we decline to disturb the Board's decision.

BACKGROUND

¶2    The legislature enacted the Utah State Retirement and Insurance Benefit Act to establish and administer a state retirement system. *See* Utah Code Ann. § 49-11-103(1) (LexisNexis 2015). The resulting program is known as Utah Retirement Systems (URS) and is governed by the Board. *Id.*; *id.* § 49-11-201. An individual employed by a participating public employer may qualify to become a member of URS. Those who do may be eligible to participate in a defined-contribution plan (e.g., a 401(k)) and/or a defined-benefit plan, often referred to as a pension plan.

¶3    An employer who participates in a pension plan may choose between two contribution schemes. The first is a non-contributory defined-benefit plan where only the employer pays money into the plan. *See, e.g., id.* § 49-13-301(1). The second is a contributory defined-benefit plan where both the member and the employer deposit money into the plan. *See, e.g., id.* § 49-14-301(1).

¶4    Member contributions vest immediately. *See, e.g., id.* § 49-14-301(5)(c). Upon the termination of employment, the member may withdraw his or her member contributions (also referred to as "receiving a refund" from the plan) or may leave them in the pension plan. *Id.* § 49-11-501(1). When a member withdraws his or her personal contributions, the associated service credit is forfeited. *Id.* § 49-11-501(5); *id.* § 49-11-102(51) (defining "service credit"). But a member who is reemployed by a participating employer may reinstate that service credit by redepositing the withdrawn contributions along with any applicable interest. *Id.* § 49-11-502.

¶5      Under either type of defined-benefit plan, members only qualify for pension benefits once they have accrued at least 4 years of service credit. *See, e.g.*, *id.* § 49-13-401. The amount of a member's pension benefits is dependent on his or her total amount of service credit.

¶6      During his career, Ostler was a member of both contributory and non-contributory retirement systems. To begin with, Ostler was employed by the Salt Lake County Sheriff's Office and the Department of Corrections between 1972 and 1988. By virtue of this employment, he was a member of the Public Safety Contributory Retirement System. Ostler made member contributions to the system and his employers made employer contributions. During this employment, he accrued 15.167 years of service credit. In 1990, having been terminated from public employment, Ostler elected to receive a refund of his member contributions—roughly $27,000. Ostler admitted that he knew that he would have to redeposit the funds (plus interest) in order to reinstate his service credit. He did not do so.

¶7      Ostler was also employed at various times from 1988 to 2004 by several other entities that participated in the Public Employees' Noncontributory Retirement System, including the Utah Department of Commerce, the Davis Applied Technology Center, and Salt Lake City Corporation. In these positions, he accrued 3.352 years of service credit. Finally, from 1992 to 1998, Ostler also worked as an adjunct employee of Salt Lake Community College (SLCC). Because the position was temporary and part-time, SLCC did not consider Ostler eligible for retirement benefits, did not enroll him in a retirement plan, and did not make contributions to URS on his behalf.

¶8      In 2001, Ostler filed a complaint in district court, alleging that SLCC had breached its contract with him by wrongfully failing to enroll him in a retirement plan or to otherwise provide him with retirement benefits. He argued, in part, that he was eligible for retirement benefits because he had worked more hours than specified in his part-time employment contract. The

district court noted that Ostler had not reported these extra hours at the time and "ha[d] no record of those hours he allege[d] to have worked." Ultimately, the district court granted summary judgment to SLCC. Ostler attempted to challenge that judgment but failed to file a timely notice of appeal, resulting in a dismissal for lack of appellate jurisdiction. *Ostler v. Salt Lake Community College*, 2004 UT App 18U, para. 7 (per curiam). Ostler then filed another notice of appeal which this court determined was also untimely. *Ostler v. Salt Lake Community College*, 2004 UT App 125U, paras. 1, 6 (per curiam).

¶9     Ostler applied for retirement benefits in 2013. URS determined that Ostler had only 3.352 years of service credit, short of the 4 years required for retirement benefit eligibility, and consequently denied his application. Ostler filed a request for the Board to review URS's decision, asserting two claims. First, Ostler contended that, despite having withdrawn his member contributions, he was entitled to some or all of an additional 15.167 years of service credit based on his 1972–1988 employment, to the extent of his employer's contributions. Second, Ostler contended that he was entitled to additional service credit based on his SLCC employment because SLCC should have enrolled him as a retirement-eligible employee despite his status as a temporary and part-time employee. The Board determined that Ostler was not entitled to any service credit because he had withdrawn his member contributions and never redeposited them. The Board further determined that Ostler's claims regarding SLCC were barred by the statute of limitations and the doctrine of laches. As a result, the Board rejected Ostler's claims. Ostler now seeks review of the Board's resolution.

ISSUES AND STANDARDS OF REVIEW

¶10    Ostler first contends that the Board erred "when it determined that Ostler forfeited all of his service credits, and therefore was not entitled to any retirement benefits, because he

did not re-deposit his *member* share of his retirement contributions." (Emphasis in original). We review the Board's interpretation and application of a statute for correctness. *McLeod v. Retirement Board*, 2011 UT App 190, ¶ 9, 257 P.3d 1090.

¶11 Ostler next contends that the Board erred "when it determined Ostler's claim against Salt Lake Community College was barred by the statute of limitations." We review the Board's application of the statute of limitations to undisputed facts for correctness. *See Ramsay v. Retirement Board*, 2017 UT App 17, ¶ 9, 391 P.3d 1069. Ostler also contends that the Board improperly applied the doctrine of laches to reach the alternate ground for rejecting his SLCC claims. The application of laches presents a mixed question of law and fact; we review the district court's legal conclusions for correctness and its factual findings for clear error. *See Johnson v. Johnson*, 2014 UT 21, ¶ 8 & n.11, 330 P.3d 704. However, before reaching the statute of limitations and laches issues, we first determine whether the doctrine of res judicata bars Ostler's claims against SLCC as a collateral attack; this issue presents a question of law. *See PGM, Inc. v. Westchester Inv. Partners, Ltd.*, 2000 UT App 20, ¶ 3, 995 P.2d 1252; *see also Olsen v. Board of Educ.*, 571 P.2d 1336, 1338 (Utah 1977). Although res judicata was not the basis of the Board's decision, "an appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record." *See Bailey v. Bayles*, 2002 UT 58, ¶ 13, 52 P.3d 1158 (emphases, citation, and internal quotation marks omitted).

ANALYSIS

I. Forfeiture

¶12 Ostler first contends that "[t]he plain language of [Utah's retirement act] clearly shows a member is entitled to [an] employer's contributions even if the member takes a refund." In his view, a member who elects to receive a refund of his or her member contributions "should only forfeit service credits equal

to the amount of the refund and should still be entitled to a retirement allowance based on the [employer] contributions that remain in the system."

¶13    This contention requires us to analyze the meaning of certain provisions of the Utah State Retirement and Insurance Benefit Act (the Act). "Under our rules of statutory construction, we look first to the statute's plain language to determine its meaning." *Sindt v. Retirement Board*, 2007 UT 16, ¶ 8, 157 P.3d 797 (citation and internal quotation marks omitted). "[S]tatutory enactments are to be so construed as to render all parts thereof relevant and meaningful[.]" *Perrine v. Kennecott Mining Corp.*, 911 P.2d 1290, 1292 (Utah 1996) (citation and internal quotation marks omitted). "It is our duty to construe each act of the legislature so as to give it full force and effect." *Board of Educ. v. Sandy City Corp.*, 2004 UT 37, ¶ 9, 94 P.3d 234 (citation and internal quotation marks omitted). "The meaning of a part of an act should harmonize with the purpose of the whole act. Separate parts . . . should not be construed in isolation from the rest of the act." *Jensen v. Intermountain Health Care, Inc.*, 679 P.2d 903, 906 (Utah 1984).

¶14    From 1972 to 1988, Ostler worked for employers that participated in the Public Safety Contributory Retirement System. Both Ostler and his employers made contributions to that system. Ostler concedes that he withdrew his member contributions and never redeposited them. But, in his view, when he elected to withdraw his member contributions from the system, he forfeited the service credit attributable to the member contributions yet retained the service credit attributable to the employer contributions. In other words, Ostler asserts that some fraction of the 15.167 years of service credit flowed only from the employer contributions and that he did not forfeit that portion.

¶15    The Board responds that the Act "shows two crucial principles that are dispositive here: 1) a member is only granted service credit if all the required retirement contributions, both member and employer contributions, are paid to URS; and

2) only member contributions, not employer contributions are vested to a member." (Emphasis omitted). According to the Board, because Ostler did not redeposit his retirement contributions (plus interest) and because the employers' contributions did not vest in Ostler, he is not entitled to retirement benefits.

¶16    We agree with the Board. Ostler's contention relies on the Act's forfeiture provision: "A member who receives a refund of member contributions forfeits the service credit *based on those contributions*." Utah Code Ann. § 49-11-501(5) (LexisNexis 2015) (emphasis added). According to Ostler, the phrase "those contributions" means only the "member contributions." On this basis, he asserts that withdrawal of member contributions leaves intact a portion of the member's service credit based on employer contributions. But, as we read the Act, all service credit is based on member contributions. This is because the language of the Act unambiguously provides that both employer contributions and member contributions must be deposited with URS in order for the member to receive service credit: "In the accrual of service credit . . . [a] person employed and compensated by a participating employer who meets the eligibility requirements for membership in a system . . . shall receive service credit for the term of the employment provided that *all* required contributions are paid to [the retirement office]." Utah Code Ann. § 49-11-401(3)(a) (emphasis added). When both contributions are received, the member receives service credit. But the nonpayment of either type of contribution results in the member receiving no service credit. In other words, because the award of service credit is predicated on receipt of both contributions, all service credit is "based on" the member contributions just as all service credit is also "based on" the employer contributions.

¶17    This conclusion is reinforced by the fact that the Act makes no distinction between service credit related to member contributions and service credit related to employer contributions. Instead, there is only a single type of service

credit—one that is based on the payment of both employee and employer contributions. The Act contains no provisions for dividing earned service credit into a member-contribution-based portion and an employer-contribution-based portion. The absence of a mechanism or formula for splitting earned service credit into two such components is a clear indication that the Act was not designed to allow an employee to withdraw all of his or her member contributions yet still receive pension benefits.

¶18    Our conclusion is also reinforced when we consider the Act's treatment of employer contributions. The Act is clear that member contributions are held by the retirement office in the member's individual account, in trust for the member, and are vested in the member. *See* Utah Code Ann. § 49-14-301(5). But the Act contains no similar provisions regarding employer contributions. Instead, the Act allows an employer's contribution rate to vary depending on the demographics and predilections of its employees: "Contribution rates for a participating employer may be different than for other participating employers based on the participating employer's current funding status and actuarial experience." *Id.* § 49-14-301(7). That is to say, an employer's contribution rate is discounted based on predictions about the percentage of its employees who will qualify for pension benefits and the average amount those employees will receive. Thus, an employer that has made extensive contributions to the retirement plan and whose former employees tend to draw fewer and smaller pensions might not be required to contribute as much for each new employee enrolled as an employer whose expected retirement liabilities exceed the assets deposited with URS. But if an employer's contribution was tied to an individual employee, as Ostler's argument requires, the employer contribution rate would simply be a flat amount per employee; it would make no conceptual sense to require a lower employer contribution for a new employee simply because other employees' individual retirement plans are properly funded. By allowing an employer's per-employee contribution to "float" up and down based on actuarial assumptions, the Act is engineered to account now for the fact that some employees will receive

refunds of their member contributions in the future or will otherwise not qualify for pension benefits.

¶19   "A member who receives a refund of member contributions forfeits the service credit based on those contributions." Utah Code Ann. § 49-11-501(5). We conclude that, because service credit requires both types of contribution, all of the service credit earned during the period of member contributions is "based on" the member contributions.[1] Consequently, the Board did not err in determing that Ostler's decision to withdraw all of his member contributions resulted in the forfeiture of all of his service credit earned during that employment.

## II. Collateral Attack

¶20   Ostler next contends that the Board improperly ruled that his SLCC claims were barred by the statute of limitations and the doctrine of laches. This contention rests on his argument that SLCC should have enrolled him as a retirement-eligible employee despite his status as a temporary and part-time employee. In Ostler's view, if SLCC had properly enrolled him, he would have earned additional service credit during his SLCC employment, which would have put him over the 4 year threshold for pension-benefit eligibility.

---

1. We note that a member who receives a refund does not necessarily forfeit all of his or her service credit. For example, if an employee earns 5 years of service credit at his or her first employer and then a further 7 years of service credit with a second employer, then elects to receive a refund of his or her member contributions deposited during employment by the second employer, he or she will forfeit the 7 years of service credit but not the 5. This is because only the 7 years of service credit were "based on" the refunded member contributions.

¶21 The Board determined that the statute of limitations on a claim against an employer for retirement service credit begins to run at the time the employer fails to make contributions to URS. Utah courts have not yet definitively ruled on when the statute of limitations for such a claim begins to run. We see potential merit in the idea that the statute of limitations for an employee's claim against an employer for failing to classify the employee as eligible to earn service credit might begin to run at a different point than the applicable statute of limitations for the employee's claim against the Board seeking pension benefits. *Cf. Ramsay v. Retirement Board*, 2017 UT App 17, 391 P.3d 1069 (discussing the application of the equitable discovery rule in the context of a claim for retirement benefits). But we need not and do not address that issue; given that Ostler's district court case already challenged SLCC's failure to contribute or consider him qualified to receive benefits, his specific claim in this petition for judicial review is barred by the issue-preclusion branch of the doctrine of res judicata.

¶22 "The general rule of law is that a judgment may not be drawn in question in a collateral proceeding[.]" *Tolle v. Fenley*, 2006 UT App 78, ¶ 15, 132 P.3d 63 (citation and internal quotation marks omitted). "[A]n attack upon a judgment is regarded as collateral if made when the judgment is offered as the basis of a claim in a subsequent proceeding." *Id.* (citation and internal quotation marks omitted). "Where a judgment is attacked in other ways than by proceedings in the original action to have it vacated or revised or modified or by a proceeding in equity to prevent its enforcement, the attack is a 'Collateral Attack.'" *Olsen v. Board of Educ.*, 571 P.2d 1336, 1338 (Utah 1977) (citation and additional internal quotation marks omitted).

¶23 "Collateral estoppel, otherwise known as issue preclusion, prevents parties or their privies from relitigating facts and issues in the second suit that were fully litigated in the first suit." *Moss v. Parr Waddoups Brown Gee & Loveless*, 2012 UT 42, ¶ 23, 285 P.3d 1157 (emphasis, citation, and internal quotation marks omitted). "Issue preclusion applies only when

the following four elements are satisfied: (i) the party against whom issue preclusion is asserted was a party to or in privity with a party to the prior adjudication; (ii) the issue decided in the prior adjudication was identical to the one presented in the instant action; (iii) the issue in the first action was completely, fully, and fairly litigated; and (iv) the first suit resulted in a final judgment on the merits." *Id.* (citation and internal quotation marks omitted).

¶24    As noted above, Ostler filed a complaint in 2001 in district court, alleging that SLCC had breached its employment contract with him by wrongfully failing to enroll him in a retirement plan during his employment with SLCC from 1992 to 1998. In that suit, Ostler challenged the determination made by SLCC that, as a part-time and temporary employee, he was not eligible for enrollment into a retirement plan. The district court ruled against Ostler in 2003, and Ostler failed to bring a timely appeal. *See Ostler v. Salt Lake Community College*, 2004 UT App 18U (per curiam); *Ostler v. Salt Lake Community College*, 2004 UT App 125U (per curiam). In 2013, when Ostler applied for retirement benefits, was rejected, and petitioned the Board for review, he argued to the Board that he should have been granted service credit for the time he was employed by SLCC. The Board rejected those claims, as do we. We conclude that this claim is a collateral attack upon the 2003 final judgment by the district court.

¶25    The first element of issue preclusion is whether "the party against whom issue preclusion is asserted was a party to or in privity with a party to the prior adjudication." *Moss*, 2012 UT 42, ¶ 23 (citation and internal quotation marks omitted). Here, the party against whom issue preclusion applies is Ostler, who brought both suits. Thus, the first element is satisfied.

¶26    The second element of issue preclusion is whether "the issue decided in the prior adjudication was identical to the one presented in the instant action." *Id.* (citation and internal quotation marks omitted). The question before the Board was

whether Ostler should have received service credit for his employment by SLCC. Ostler had not received such credit, because the district court had determined that SLCC properly decided Ostler was not eligible for enrollment in a retirement plan. Put another way, SLCC made a status determination that Ostler was not eligible for a retirement plan, the district court upheld that status determination, and Ostler now seeks retroactive enrollment in the retirement plan in contravention of the district court's ruling. Although now framed as an attack on the Board's failure to pay retirement benefits, the underlying issue is identical: whether Ostler's employment at SLCC qualified him for enrollment in a retirement plan. Consequently, the second element is satisfied.

¶27 The third element of issue preclusion is whether "the issue in the first action was completely, fully, and fairly litigated." *Id.* (citation and internal quotation marks omitted). An issue is completely, fully, and fairly litigated when it is properly raised, submitted for determination, and actually determined. *See Fowler v. Teynor*, 2014 UT App 66, ¶ 24, 323 P.3d 594. In the present case, Ostler argues that he should have earned service credit while employed by SLCC because he was a retirement-eligible employee. The issue raised in the district court case was whether SLCC was obligated to enroll Ostler as a retirement-eligible employee, which would have allowed him to earn service credit, despite his status as a part-time and temporary employee. During the resolution of that case, Ostler had a full and fair opportunity advance his arguments regarding his employment status. And by granting summary judgment in favor of SLCC, the district court determined that there was "no genuine dispute as to any material fact" and that, under the undisputed facts, SLCC was "entitled to judgment as a matter of law." *See* Utah R. Civ. P. 56(a). Because the core issue in the district court case was whether Ostler's SLCC employment qualified him to earn service credit, and because the district court actually determined that it did not, we conclude that issue was completely, fully, and fairly litigated. *See Fowler*, 2014 UT App 66, ¶¶ 24–26. The third element is therefore satisfied.

¶28 The fourth element of issue preclusion is whether "the first suit resulted in a final judgment on the merits." *Moss*, 2012 UT 42, ¶ 23 (citation and internal quotation marks omitted). All of the claims raised in Ostler's district court case were disposed of by summary judgment. *Ostler*, 2004 UT App 125U, para. 5 (per curiam) ("In granting SLCC's motion for summary judgment, the district court necessarily denied Ostler's cross-motion for summary judgment.") A summary judgment that disposes of all of the claims amounts to a final judgment on the merits. *See American Estate Mgmt. Corp. v. International Inv. & Dev. Corp.*, 1999 UT App 232, ¶¶ 15–17, 986 P.2d 765; *see also Scholzen Products Co. v. Palmer*, 2000 UT App 191U, para. 6 (noting that a "suit resulted in a final judgment on the merits when the trial court granted [the defendants'] motion for summary judgment"). Consequently, the fourth element is also satisfied.

¶29 Ostler's claim that he is entitled to additional service credit based on his employment by SLCC is predicated on the assumption that SLCC improperly deemed him ineligible for enrollment in a pension plan. Because the propriety of SLCC's determination was fully and fairly litigated and culminated in the district court's 2003 final order, all four elements of issue preclusion are satisfied, and Ostler is barred from collaterally attacking that order nearly a decade after its entry.[2]

---

2. The Board's final order adopted the Hearing Officer's written decision. The Hearing Officer's written decision contains a cryptic footnote stating that "the hearing officer in this matter has ruled that the Third District Court did not have jurisdiction to hear the relevant claims in [the 2003 action]." Neither the Board nor the Hearing Officer explained the reasoning for this statement, and we are unaware of any authority of the Board to rule on a district court's jurisdiction. *Cf.* Utah R. Civ. P. 60 (describing the procedure by which a *court* may set aside a judgment or order for, inter alia, lack of jurisdiction). At oral argument, counsel suggested that the footnote may reference Ostler's failure to exhaust his administrative remedies before

(continued…)

CONCLUSION

¶30    We conclude that all 15.167 years of service credit Ostler earned while participating in the Public Safety Contributory Retirement System were "based on" his member contributions; consequently, the Board did not err in determining that Ostler forfeited 15.167 years of service credit when he elected to receive a refund of 15.167 years' worth of his member contributions. We further conclude that Ostler's attempt to establish additional service credit within the Public Employees' Noncontributory Retirement System based on his employment with SLCC is a collateral attack on the 2003 district court determination (that SLCC had correctly deemed Ostler's position ineligible for enrollment in that system); consequently, this issue is barred by the issue preclusion branch of res judicata.

¶31    For the foregoing reasons, we decline to disturb the Board's decision.

––––––––––

(…continued)

filing suit in district court. *See* Utah Code Ann. § 63G-4-401 (LexisNexis 2016) (discussing the exhaustion requirement). This argument was never properly raised in the district court proceeding. And even if it had been raised and found meritorious so as to nullify the district court's summary judgment, it would simply establish that Ostler should have begun administrative proceedings within three years after, at the latest, his alleged discovery of the claims underlying his 2001 complaint. *See id.* § 78B-2-305(4) (2012) (prescribing a three-year statute of limitations for "a liability created by the statutes of this state").